STATE EX REL. BOSTON & MONTANA CONSOLIDATED COPPER & SILVER MINING COMPANY ET AL., RELATORS, v. CLANCY, JUDGE, ET AL., RESPONDENTS.

(No. 2,040.)

| 30 | 193 |
| 32 | 265 |

| 30 | 193 |
| 34 | 141 |
| 34 | 142 |

| 30 | 193 |
| 38 | 208 |

| 30 | 193 |
| 39 | 169 |

STATE EX REL. BOSTON & MONTANA CONSOLIDATED COPPER & SILVER MINING COMPANY RELATOR, v. HARNEY, JUDGE, ET AL., RESPONDENTS.

(No. 2,049.)

(Submitted February 28, 1904.  Decided April 4, 1904.)

*Contempt—Nature of Proceedings—Disqualification of Judge —Change of Venue—Statutes—Constitutional Law.*

1. *Obiter:* A proceeding in contempt to punish for the violation of an injunction, is distinct from the action wherein the injunction violated was issued.
2. *Obiter:* The court will not decide the question of the constitutionality of a statute, unless the decision of such question is necessary.
3. Code of Civil Procedure, Sections 180 and 615, as amended by Acts of the Second extraordinary session of the Eighth legislative assembly (1903), relating to disqualification of judges and change of venue, have no application to contempt proceedings.
4. Contempt proceedings are of a criminal nature.
5. *Obiter:* In contempt proceedings the evidence must show that the accused party is guilty beyond a reasonable doubt.
6. Under Constitution, Art. VIII, Secs. 1, 11, which, as shown by the original draft of the Constitution finally adopted, read, "The judicial power of the state shall be vested * * * district courts," etc., and that "the district

courts shall have original jurisdiction," etc., the district courts are distinct entities, and a transfer of a cause from one district to another amounts to a change of venue.

7. The power to punish for contempt is inherent in the district courts, and exists independently of statutes, and cannot be taken away or so far abridged by the legislature as to leave such courts without proper and vigorous means of protecting themselves from insult or of actually enforcing their lawful orders.

8. Legislation passed at an extraordinary session of the legislature must be interpreted in the light of the proclamation of the governor convening such session.

WRITS of prohibition by the state, on the relation of the Boston & Montana Consolidated Copper & Silver Mining Company and another, against William Clancy, judge of the district court of the Second judicial district, and the district court of the said district of Silver Bow county, and by the state on the relation of the same company, against E. W. Harney, judge, and another. Alternative writ quashed, and proceedings dismissed.

*Messrs. Forbis & Evans, Mr. A. J. Shores,* and *Mr. C. F. Kelley,* for Relator.

*Mr. John J. McHatton, Mr. J. M. Denny, Mr. T. J. Walsh, Messrs. Toole & Bach,* and *Mr. Jesse B. Roote,* for Respondents.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

These causes were heard at the same time, and submitted on the same briefs. As the facts are practically the same, a statement of one cause will suffice for both.

The petition filed herein alleges that in a certain action pending in the district court of Silver Bow county an injunction was issued and served on these relators, enjoining them from mining ore from certain designated ground. Thereafter an affidavit was filed charging the relators with violating such injunction. An order to show cause why they should not be punished for contempt was issued and served, but before the time

for the hearing, the relators filed an affidavit alleging that they had reason to believe, and did believe, that they could not have a fair and impartial hearing of such contempt proceeding before the judge presiding, on account of the bias and prejudice of such judge, and a like affidavit was also filed in the action out of which the contempt proceeding grew, but notwithstanding the filing of such affidavits the judge proceeded to hear the matters. Thereupon an alternative writ of prohibition was sued out of this court. The return raises no question of fact, but there is submitted for consideration the construction of Sections 180 and 615 of the Code of Civil Procedure, as amended by the Second extraordinary session of the Eighth legislative assembly.

It may be observed, in passing, that "the proceeding in contempt is distinct from the action wherein the injunction violated was issued." (*State ex rel. Flynn* v. *Dist. Court,* 24 Mont. 33, 60 Pac. 493; *Ex parte Gould,* 99 Cal. 360, 33 Pac. 1112, 21 L. R. A. 751, 37 Am. St. Rep. 57); and while the alternative writ of prohibition restrains the court from proceeding in the main action out of which the contempt proceeding grew, as well as in the contempt proceeding itself, it is to that extent unwarranted by the facts, as the petition does not charge any attempt on the part of the court to do more than proceed in the contempt matter, so that this prohibition proceeding will be treated as if directed against the attempt to hear the contempt matter only.

The question of the constitutionality of Sections 180 and 615 as amended, above, is only indirectly involved; and, as this court will not decide such a question unless necessary, consideration of that matter will be deferred until a decision is reached in another cause submitted at the same time as these, and in which that question is directly involved, and a solution of it necessary to a determination of the cause.

If the Acts are unconstitutional, the court properly disregarded them for that reason. If they are valid, but have no

application to contempt proceedings, they could be properly disregarded for that reason. .

Section 180 of the Code of Civil Procedure, as originally enacted, among other things, provides the circumstances under which a district judge is disqualified to hear or determine any action or proceeding before him: (1) When he is a party or when he is interested; (2) when he is related to either party within certain degrees; and (3) when he has been attorney for either party, or made or rendered the judgment, order or decision appealed from.

The amendment made by the Second extraordinary session of the Eighth legislative assembly added a fourth ground of disqualification, as follows: "(4) When either party makes and files an affidavit as hereinafter provided, that he has reason to believe, and does believe, he cannot have a fair and impartial hearing or trial before a district judge by reason of the bias or prejudice of such judge."

Section 615 of the same Code provides for a change of venue in civil actions as follows: "(1) When the county designated in the complaint is not the proper county. (2) When there is reason to believe that an impartial trial cannot be had therein. (3) When the convenience of witnesses and the ends of justice would be promoted by the change. (4) When, from any cause, the judge is disqualified from acting."

The amendment made to this section merely adds to Subdivision 4, above, a provision that in case the parties shall agree upon another district judge or upon a member of the bar as judge *pro tempore,* or if any qualified district judge shall be called in, and shall, within thirty days after the motion for change of venue is made, appear and assume jurisdiction of the cause, no change of venue shall be granted. ·

The only inquiry with which we are now concerned is, do these legislative enactments apply to contempt proceedings, assuming that they are valid and in force?

There is nothing in the amendments which changes the character of the original statutes, and it is clear that, if they did not

apply to contempt proceedings before the amendments were made, they do not now. They do not do so in terms. Rapalje on Contempts, Section 110, says: "It may safely be laid down as a general rule that statutory provisions relative to change of venue have no application to proceedings to punish contempts, unless such proceedings are expressly included, *eo nomine,* in the written law." Whether or not we might be led to accept this author's view of the law, from such surrounding circumstances as may tend to indicate the legislative intention we reach the conclusion that these Acts do not apply to contempt proceedings.

. Section 180 is comprised in Part I, Title II, of the Code of Civil Procedure; and that title has to do with judicial officers, as such, and not with courts or court proceedings. It assumes to prescribe the qualifications and disqualifications of such officers; designates the acts which they may perform at chambers, and the incidental powers and duties of such officers. The amendment only seeks to add an additional disqualification.

Section 615 is included in Part II, Title IV, of the same Code; and this title has to do with the place of trial of *civil actions,* including the provisions for change of venue. In determining the applicability of this section to the question before us, it is therefore only necessary for us to consider whether contempt proceedings fall within the meaning of the term "civil actions."

Blackstone treats of contempts under the head of crimes and misdemeanors (4 Bl. Com. 1), punishable as an offense against public justice (*Id.* c. 10) and also by summary proceedings (*Id.* c. 20).

In *New Orleans* v. *Steamship Co.,* 20 Wall. 387, 22 L. Ed. 354, the Supreme Court of the United States said: "Contempt of court is a specific criminal offense. The imposition of the fine was a judgment in a criminal case."

In *In re Buckley,* 69 Cal. 1, 10 Pac. 69, in speaking of a constructive contempt, the Supreme Court of California said: "It should be remembered that the proceeding here taken is criminal or *quasi* criminal." In *Ex parte Gould, supra,* the

same court said: "Although the alleged misconduct of defendants occurred in the progress of a civil action, the proceeding to punish them for such misconduct is no part of the process in the civil action, but is in the nature of a criminal prosecution."

In *State ex rel. Flynn* v. *District Court,* 24 Mont. 33, 60 Pac. 493, this court said: "When prosecuted under the Code of Civil Procedure, a contempt of court is not to be regarded as a criminal offense, to be prosecuted only by complaint, information or indictment, as laid down by Section 8 of Article III of the state Constitution, but, rather, as a special proceeding of a criminal character—in that sense, it is a public offense." (*Phillips* v. *Welch,* 11 Nev. 187; *Baltimore & O. R. R. Co.* v. *Wheeling,* 13 Grat. 57.)

So highly penal in character are these proceedings considered, that the evidence must show that the accused party is guilty beyond a reasonable doubt. (*State ex rel. Boston & Montana C. C. & S. Mning Co.* v. *District Court,* 30 Mont. 96, 75 Pac. 956; *Potter* v. *Low,* 16 How. Prac. 549; *State* v. *Davis,* 50 W. Va. 100, 40 S. E. 331; *Accumulator Co.* v. *Con. Elec. Storage Co.,* (C. C.) 53 Fed. 793; *United States* v. *Jose,* (C. C.) 63 Fed. 951.) And a mere preponderance of the evidence is not sufficient. (*In re Buckley,* above.)

Furthermore, the same acts which may be punished in the summary proceeding are characterized by the lawmaking power as criminal, and the additional remedy by an ordinary criminal action is provided for in Penal Code, Section 293. Contempt proceedings are *sui generis;* and, from a consideration of the foregoing authorities, and an examination of the practice provided for in the Code of Civil Procedure (Sections 2170-2183) for summary punishment of contempts, it is apparent that these contempt proceedings have most, if not all, of the characteristics of a criminal case, and few, if any, of a civil action.

A change of venue in criminal cases is provided for in Penal Code (Sections 1970-1981), and the legislation under consideration has nothing to do with that Code. As Section 615 has to

do with change of place of trial in civil actions, and as a contempt proceeding is not such an action, we hold that, in amending that section, contempt proceedings were not in contemplation of the legislature.

While respectable authority may be found in support of the contention that it is beyond the legislative power to provide for a change of venue or change of judge in contempt proceedings, it is not now necessary to consider that matter. It is sufficient for this inquiry to say that the legislature did not do so in this instance.

The relators suggest that in fact no attempt is made to change the venue by this section, as those terms are generally understood; that our district courts are in reality only the several departments of one court—and in support of that contention quote the opening sentence of Section 11, Article VIII, of the Constitution: "The district court shall have original jurisdiction in all cases at law and in equity," etc. However, an examination of the original draft of the Constitution as finally adopted, now on file in the office of the secretary of state, discloses that there is a misprint in the printed copies in general use. The opening sentence reads, "The district courts shall have original jurisdiction," etc. Section 1 of Article VIII reads: "The judicial power of the state shall be vested in the senate sitting as a court of impeachment, in a supreme court, district courts, justices of the peace, and such other inferior courts as the legislative assembly may establish in any incorporated city or town." It is therefore clear that the district courts of this state are distinct entities, and that the transfer of a cause from one district to another would amount to change of venue, within any proper meaning which might be ascribed to those terms.

Neither do we think that such proceedings were in contemplation of the legislature in amending Section 180, above. It is conceded by counsel for relators that neither of these sections has any application to contempts committed in the immediate presence of the court, and that this is so is apparent from the

practice indicated, which could not possibly be made applicable in such instances. But it is contended that this Act does apply to what are designated as constructive contempts, such as were under consideration by each of the departments of the district court, to prevent the further proceedings in which was the object to be sought in each of these applications to this court.

The power to punish for contempt is inherent in the district courts of this state, and is necessary to the existence of the courts and the orderly conduct of the business before them. (*Territory* v. *Murray,* 7 Mont. 251, 15 Pac. 145.) That power exists independently of statute, and any legislation upon the subject touching the power itself must be regarded as merely declaratory of the common law, or, if in contravention of the common law, would doubtless be held inoperative. We may assume, without deciding, that the legislature may prescribe reasonable rules for the practice in such cases, and may provide a reasonable limit to the punishment to be inflicted; but that it may, directly or indirectly, deprive a court of the power to enforce its decrees, or obedience to its lawful mandates, cannot be conceded. (*In re Pierce,* 44 Wis. 411.) Neither will any legislation be effective which so far abridges, impairs or cripples the power as to leave the courts without ample, vigorous means of protecting themselves from insult, or of effectually enforcing their lawful orders. As this power is inherent in the district courts, it is merely truismatic to say that a power which the legislature does not give, it cannot take away. (*Hale* v. *State,* 55 Ohio St. 210, 45 N. E. 199, 36 L. R. A. 254, 60 Am. St. Rep. 691; *Holman* v. *State,* 105 Ind. 513, 5 N. E. 556.)

But it is contended that the only effect of Section 180, as amended, is to deprive a particular judge of the power to preside at such hearing, and does not in any other manner interfere with the lower court itself. But it is difficult to conceive of a court without a presiding judge, and if, upon the filing of an affidavit such as is contemplated by Section 180 as amended, the presiding judge becomes, *ipso facto,* disqualified to hear the matter further, any other investigation into the alleged con-

tempt must be made to depend upon the bare possibility that another judge may be procured to hear it. Contempt proceedings are summary, and, in contemplation of law, will be heard and disposed of without any unnecessary delay. If Section 180, as amended, be valid and applicable to contempt proceedings, then a party charged may disqualify successively five judges who might be secured to hear the matter, and, in the absence of some more effective means than any now known of compelling outside judges to undertake such hearings, it is no stretch of the imagination to foresee an absolute inability in the courts to enforce their mandates or respect for their authority. And a court without power to enforce its lawful orders would merit the contempt of every one.

We are of the opinion that this section cannot be made applicable to contempt proceedings without materially interfering with the inherent power of these courts, and, in the absence of any express legislative declaration on the subject, we prefer to believe that the legislature did not intend to invade unnecessarily the province of a co-ordinate branch of the state government, and therefore did not have contempt proceedings in contemplation in passing this Act.

The Acts amending Sections 615 and 180, above, are companion measures. They were both enacted at an extraordinary session of the legislature, and were intended to be correlative measures, operating to accomplish the same end, or, more strictly speaking, the Act to amend Section 615 was intended to supplement the Act amending Section 180. This conclusion is reached by a consideration of the proclamation of the governor convening the legislature in extraordinary session. The dual purpose sought to be accomplished, as expressed in that proclamation, so far as the inquiry before us is concerned, was, first, general legislation whereby bias and prejudice of district judges shall constitute a disqualification of such judges; and, second, legislation making suitable provision for the trial of *such case or cases in such event.* Section 11, Article VII, of the Constitution, provides that, when the legislature is called

in extra session, "It shall have no power to legislate on any subjects other than those specified in the proclamation, or which may be recommended by the governor." In this instance no recommendations were made by the governor differing in any degree from the matters embraced in the proclamation above, so far as the question before us is concerned; and, as the two measures now under consideration were the only ones enacted which have any reference whatever to either of the subjects enumerated above, it is quite apparent that the amendment to Section 180 is the legislation which was intended to meet the first condition, and the amendment to Section 615 is the legislation which was intended to meet the second. The amendment to Section 615, then, was intended to make suitable provision for the trial of all civil cases wherein the presiding judge may be disqualified pursuant to the provisions of Section 180 as amended. The scope of the amendment to Section 615 is as broad as that to Section 180; in other words, each comprehends the same class of cases—nothing more, nothing less. If the amendment to Section 615 has no application to contempt proceedings, as we have already seen, it follows, as a matter of course, that the amendment to Section 180 has none. However comprehensive the terms employed in this amendment are, they must be read in the light of the proclamation of the governor, and considered with the amendment to Section 615 and the two Acts construed together. When this is done, we are forced to the conclusion that contempt proceedings were not in the legislative contemplation in passing either of them.

The alternative writ heretofore issued in each of these proceedings is quashed, and the proceedings are dismissed.

*Dismissed.*