# FEBRUARY, 1906.

## Ex parte R. J. Allison.

### No. 1528.. Decided February 1, 1906.

**1.—Constitutional Law—Caption of Act.**

The caption of the Act of 29th Legislature, p. 372, authorizing injunction against the use of premises for gaming, clearly and fully expresses the one subject of the act, as required by the constitution, art. 3, sec. 35. (P. 462.)

**2.—Legislative Power—Enjoining Crimes and Nuisances.**

The legislature has power to extend or to abridge equitable remedies, and this power, in so far as concerns injunctions, is not affected by the provision in the Bill of Rights guaranteeing trial by jury, since the juries may be had in actions of an equitable as well as of a legal nature; and in contempt proceedings for violation of the injunction the right is not abridged, since no right to jury trial in those cases ever existed, and only the existing right to it was protected by the constitution. (P. 462.)

**3.—Injunction—Penal Law—Twice in Jeopardy.**

The provision of the Bill of Rights forbidding that any person, for the same offense, should be twice put in jeopardy, does not forbid punishment, in contempt proceedings, of one violating an injunction of the courts, though the same act may be a violation of the penal law for which he may also be subject to punishment. (Pp. 462, 463.)

**4.—Contempt—Proceedings by Private Citizen.**

The Legislature may designate the person or class of persons who may maintain actions to restrain or abate public nuisances, as by conferring upon any citizen of the State the power to institute proceedings to punish for contempt one violating an injunction of court against the use of premises for gaming. (P. 463.)

**5.—Injunction—Nuisance—Due Process of Law.**

The remedy by injunction against a public nuisance is of ancient date and such procedure is due course of the law of the land. (Pp. 463, 464.)

**6.—Enjoining Criminal Act.**

There is no peculiar sanctity about criminal or quasi-criminal acts which can debar the Legislature from providing that one may be enjoined, by a suit in equity, from establishing a public nuisance, such as a gaming house. (P. 464.)

**7.—Court of Criminal Appeals.**

Query, whether the Supreme Court will entertain a proceeding by habeas corpus, where the applicant has previously procured such writ from the Court of Criminal Appeals, and has been remanded to custody. (P. 464.)

Original application, in the Supreme Court, for writ of habeas corpus.

*Sluder & Neal* and *N. B. Williams,* for relator.—A court of equity can not enjoin crime simply because it is crime, and has not jurisdiction over criminal matters simply because the acts complained of are violative of the penal laws of the state. State v. Patterson, 14 Texas

Civ. App., 465; People v. Dist. Court of Lake Co., 58 Pac. Rep., 604; Ex parte Warfield, 40 Texas Crim. App., 420; York v. Yzaguaire, 71 S. W. Rep., 563; 11 Enc. of Law (2d ed.), 196; 16 Enc. of Law (2d ed.), 363; State v. Schweickardt, 19 S. W. Rep., 51, sec. 7; Yellowstone Kit v. Wood, 43 S. W. Rep., 1066; Ex parte Sawyer, 124 U. S., 215; Schmidt v. West, 104 Fed. Rep., 272; Suess v. Noble, 31 Fed. Rep., 856; see also cases cited in Patterson Case.

The legislature can not add to or take from the jurisdiction of the district courts, or any other court, except as provided for in the constitution; and as the district court could not and would not issue the writ in this character of case before the passage of chapter 153, Gen. Laws 1905, said act can not authorize or require the courts to issue the writ now. State v. Patterson, 14 Texas Civ. App., 465; Ex parte Towles, 48 Texas, 431; Leach v. State, 36 Texas Crim. App., 248; Ex parte Ginnochio, 30 Texas Crim. App., 593; Gibson v. Templeton, 62 Texas, 555; Jernett v. Owens, 63 Texas, 261; State v. DeGress, 72 Texas, 243; Lytle v. Halff, 75 Texas, 133; Powell v. State, 17 Texas Crim. App., 348; Thomas v. Hill, 3 Texas, 271; Ex parte Warfield, 49 Texas Crim. App., 420; Cope v. Dist. Fire Assn., 39 Am. Rep., 30; Anderson v. Kennedy, 58 Texas, 616.

The powers of the government of the State of Texas are divided into three distinct and separate branches, i. e., legislative, executive and judicial, and the power properly attached to one can not be exercised by either of the others, or in any manner interfered with; and chapter 153 of Laws of 1905 directly and expressly dictates to the judiciary in what character of cases the writ of injunction shall be issued, and virtually commands that the courts shall issue the writs in this character of cases, and that, too, when the courts have uniformly refused to do so. Art. 2, sec. 1, Cons. of Texas; chap. 163, Gen. Laws 1905; Powell v. State, 17 Texas Crim. App., 347; Martin v. State, 21 Texas Crim. App., 1.

Chapter 153, General Laws of 1905, is unconstitutional, because the subject of the act is not indicated by the title, and more subjects are covered in the act than are indicated by the title. Adan & Wickes v. Water Co., 86 Texas, 487; Constitution of Texas, art. 3, sec. 35.

Under our constitution, the courts are only open to a citizen to redress an "injury done him in his lands, goods, person or reputation"; and the provision of the constitution declaring that the courts shall be open for the redress of injury, necessarily precludes the opening of the courts unless there is injury charged. The maxim that the mention of one thing is the exclusion of the other, is not only a legal, but a logical one, and applies with peculiar force to the case at bar. Art. 1, sec. 13, Constitution of Texas; Faure v. Warren, 72 S. W. Rep., 404; Chambers v. Gallup, 70 S. W. Rep., 1009.

The legislature has no power to pass a law which, in its effect, places a citizen twice in jeopardy for the same offense or transaction, and the only exception to this rule is where the act complained of inflicts injuries, or invades private rights. In other words, the legislature has no power to authorize the courts of equity to punish for crime, in addition to the punishments which can be inflicted in the criminal courts

for the same transaction. Cons. of Texas, art. 1, sec. 14; Uhrig v. State, 14 Mo. App., 413; State v. Schweickardt, 19 S. W. Rep., 52.

The legislature has no power to authorize the courts to try a citizen for a criminal offense, except by presentment by bill of indictment or information. A bill in equity is not such presentment. Cons. of Texas, art. 1, sec. 10; Code of Crim. Prac., art. 437; Uhrig v. State, 14 Mo. App., 413.

The legislature has no power to authorize courts of equity to compel a citizen to give evidence against himself of a criminal transaction. Rev. Stat., arts. 2271, 2293, 2297; Tillman v. Peoples, 67 S. W. Rep., 201; Cons. of Texas, art. 1, sec. 10.

The legislature has no power to pass a law which, in effect, enables a court of equity to try a citizen for the violation of a criminal statute, on a pretense that he is being tried for contempt, and thereby deprive him of the right of appeal. The legislature nor the courts can do indirectly that which the constitution forbids them to do directly.

The legislature has no power to authorize courts of equity to try a citizen for a criminal offense pure and simple without the intervention of a jury.

The said act confers upon the court, sitting as a chancellor, to try a citizen for the violation of the gaming laws of the state, which violations, under the criminal statutes, are misdemeanors, without the aid or intervention of a jury. Cons. of Texas, art. 1, secs. 10, 15; Uhrig v. State, 14 Mo. App., 413; State v. Schweikardt, 19 S. W. Rep., 52; dissenting opinion Judge Davidson, in Ex parte R. J. Allison, attached to application herein.

If the purpose of the law in question is to enable the courts of equity to suppress crime, the law is invalid. Atty. Gen. v. Tubor Ice Co., 104 Mass., 239; State v. Uhrig, 14 Mo. App., 413; Carlton v. Rugg, 5 Law Rep. Ann., 193.

*R. V. Davidson,* Attorney-General, and *Claude Pollard,* Assistant, for respondent.—The application shows upon its face that relator is held by respondent under and by virtue of a mandate of the Court of Criminal Appeals of this state, such mandate based upon the judgment of that court remanding the relator to the custody of respondent. The relator was originally held by virtue of a judgment of the district court of the Nineteenth District, adjudging him guilty of contempt for violating an injunction granted by said court. The application here is based upon the same violation of the same injunction, which has already been reviewed and adjudicated by the Court of Criminal Appeals, upon application for habeas corpus predicated upon the same allegations presented to this court. See 14 Court Reporter, p. 401. Constitution, art. 5, secs. 3, 5; Rev. Stat. 1879, art. 1069; Rev. Stat. 1895, art. 1053; chapter 17, Acts 29th Leg., p. 20; Ex parte Allison, 14 Texas Court Reporter, 409; Crane v. Blum, 56 Texas, 325; Hatch v. Garza, 22 Texas, 188; Teal v. Terrell, 48 Texas, 508; Foster v. Wells, 4 Texas, 101; 24 Am. & Eng. Enc. of Law, 721; Hopkins v. Lee, 6 Wheaton, 109; Santa Cruz Gap Turnpike Co. v. Santa Clara Co., 62 Cal., 42; Chouteau v. Gibson, 76 Mo., 38; Gibson v. Chouteau, 7 Mo. App., 1.

The power of the legislature to condemn, regulate, restrain, and, if necessary, to prohibit and destroy whatever is injurious to the public health and morals, or offensive to the public sense, is universally recognized. Mugler v. Kansas, 123 U. S., 623; Kidd v. Pearson, 128 U. S., 16; State v. Marshall, 1 Law Rep. Ann., 51; State v. Noyes, 30 N. H., 279; State v. Saunders, 18 Law Rep. Ann., 646.

The keeping of a common gaming house is a common nuisance, because such a place has a tendency to bring together idle and disorderly persons, encourage avariciousness, corrupt the public morals, and lead to breaches of the peace. State v. Goodnight, 70 Texas, 682; State v. Patterson, 14 Texas Civ. App., 465; Thatcher v. State, 48 Ark., 60; People v. Raynes, 3 Cal., 366; People v. Sponsler, 1 Dak., 277; State v. Layman, 5 How. (Del.), 570; State v. Worth, R. M. Charlt. (Ga.), 5; People v. Goldman, 1 Idaho, 714; Bloomhuff v. State, 8 Blackf. (Ind.), 205; Bollinger v. Commonwealth, 98 Ky., 574; State v. Haines, 30 Me., 65; Wheeler v. State, 42 Md., 563; Commonwealth v. Stahl, 7 Allen (Mass.), 304; State v. Crummey, 17 Minn., 72; Barada v. State, 13 Mo., 94; Hill v. Pierson, 45 Neb., 503.

For more than three hundred years, independent of any statute, the enjoining of common nuisances, on information by some one representing the public, has been an established branch of equity jurisdiction. Mugler v. Kansas, 123 U. S., 623; Penn v. W. & B. Bridge Co., 13 How., 518; Hilliard on Injunctions, p. 310; Georgetown v. Alexandria Canal Co., 12 Pet., 91; State v. Crawford, 42 Am. Rep., 182; Littleton v. Fritz, 65 Iowa, 488; 54 Am. Rep., 19; People v. Davidson, 30 Cal., 379; State v. Saline Co., 51 Mo., 381.

Proceeding for violating injunction against maintaining a common nuisance is not an invasion of constitutional right of jury trial. Ex parte Allison, 14 Texas Court Reporter, 409; State v. Murphy, 71 Vt., 137; Shapira v. D'Arcy, 180 Mass., 378.

Public nuisances, though indictable, may be enjoined. State v. Goodnight, 70 Texas, 682; State v. Patterson, 14 Texas Civ. App., 465; Story's Equity Jurisprudence, par. 921-923; Woods on Nuisances, p. 814; Rhodes v. Saunders, 66 N. H., 84; 18 Law Rep. Ann., 654; State v. Mussey, 72 Vt., 221; Weakley v. Page, 102 Tenn., 202; 46 Law Rep. Ann., 558; Columbian Athletic Club v. State, 143 Ind., 109; 28 Law Rep. Ann., 731; State v. Crawford, 28 Kan., 726; 42 Am. Rep., 182; Hamilton v. Whitridge, 11 Md., 128; 69 Am. Dec., 184.

The act does not violate the provisions of the constitution that the accused in criminal prosecutions shall not be compelled to give evidence against himself. Art. 1, sec. 10, Cons. of Texas; Aston v. State, 27 Texas Crim. App., 574; Pyland v. State, 33 Texas Crim. App., 382; White v. State, 33 Texas Crim. App., 177; Floyd v. State, 7 Texas, 215; Ex parte Park, 37 Texas Crim. App., 590; Ex parte Wilson, 39 Texas Crim. App., 630; Rapalje on Contempt, secs. 74 and 78.

The act does not violate that provision of the constitution that no person, for the same offense, shall be twice put in jeopardy of life and liberty. Art. 1, sec. 14, Cons. of Texas; Powell v. State, 17 Texas Crim. App., 345; Moseley v. State, 33 Texas Crim. App., 671; Pizano v. State, 20 Texas Crim. App., 139; Ex parte Porter, 16 Texas Crim.

App., 321; The Palmyra, 12 Wheat., 14; Three Copper Stills, 47 Fed. Rep., 495; Black's Law Dictionary, 649; State v. Roby, 142 Ind., 168.

The district court has general jurisdiction to grant injunctions. Texas Cons., art. 5, sec. 8; County of Anderson v. Kennedy, 58 Texas, 616.

The legislature can change, abolish or enact rules of equity. Ex parte Warfield, 40 Texas Crim. Rep., 419; Sumner v. Crawford, 91 Texas, 132; Littleton v. Fritz, 22 N. W. Rep., 643, 644; Mugler v. Kansas, 123 U. S., 623; Carleton v. Rugg, 5 Law Rep. Ann., 196; Sullivan v. Dooley, 73 S. W. Rep., 82.

Jurisdiction is determined by the subject-matter in controversy, and is not determined by the sufficiency or insufficiency of the cause of action. To create a new cause of action, without interfering with the subject-matter, as fixed by the constitution, does not affect the jurisdiction. Withers v. Patterson, 27 Texas, 495; Templeman v. Gresham, 61 Texas, 53.

In addition to the jurisdiction of the district court, as provided by art. 5, sec. 8, it also has such other jurisdiction "as may be provided by law." Art. 5, sec. 8, last line of Texas Constitution, as amended in 1891.

The section of the constitution above cited also provides that the district court shall have jurisdiction of all causes of action for which no jurisdiction is provided by the constitution or law. Gamel v. Smith, 3 Texas Civ. App., 23.

That the act may also be criminal can not in any manner affect the validity or constitutionality of the injunction law. State of Texas v. Goodnight, 70 Texas, 685; Vegelahn v. Gunter, 35 Law Rep. Ann., 724; In re Debs, 158 U. S., 564; Baltimore & P. Ry. Co. v. First Baptist Church, 108 U. S., 317, 329.

As to whether or not the act can be enjoined is a mere matter of legislation. Stone v. Mississippi, 101 U. S., 814.

The county courts and district courts have concurrent jurisdiction to grant injunctions under the law here in question. Dean v. State, 88 Texas, 296.

The district court has general jurisdiction to grant injunctions without regard to the amount or subject-matter of the suit. Gulf, C. & S. F. Railway v. Rawlins, 80 Texas, 580; Chambers v. Cannon, 62 Texas, 294; Stein v. Frieberg, 64 Texas, 272; County of Anderson v. Kennedy, 58 Texas, 621; Day v. Chambers, 62 Texas, 191; Seymour v. Hill, 67 Texas, 385.

*W. L. Eason* and *Minor Moore*, also for respondent.—A second writ of habeas corpus will not be granted, unless it be shown that since the first hearing there is newly-discovered evidence, or evidence which was impossible to be produced at the first hearing, or for the purpose of removing an afflicted person for the preservation of life; and perhaps other exceptions which are not germane to the cause now before the court. Art. 209, Code Criminal Procedure; art. 175, Code Criminal Procedure; art. 207, Code Criminal Procedure; Hibler v. State, 43 Texas, 198; Miller v. State, 43 Texas, 581; Ex parte Ainsworth, 27

Texas, 732; Ex parte Wilson, 20 Texas Cr. App., 507; Ex parte Foster, 5 Texas Cr. App., 643; Ex parte Rosson, 24 Texas Cr. App., 227.

The Supreme Court is not clothed with appellate jurisdiction over the judgments of the Court of Criminal Appeals. Ex parte Reed and Lytle, 14 Texas Ct. Rep., 347; Holman v. Mayor, 34 Texas, 669.; Darrah v. Westerlage, 44 Texas, 389; Ex parte Boland, 11 Texas Cr. App., 166.

The Supreme Court and the Court of Criminal Appeals have concurrent jurisdiction to grant the writ of habeas corpus in contempt cases growing out of civil actions. Chapter 17, Acts 29th Leg.; art. 155, Code Criminal Procedure; Yarborough v. State, 2 Texas, 521.

To create a new cause of action, without interfering with the subject-matter, as fixed by the constitution, does not enlarge the jurisdiction. Ex parte Towles, 48 Texas, 431.

The district court has general jurisdiction to grant injunctions; and the act in question does not detract from or repair this power. Art. 5, sec. 8, Cons.; County of Anderson v. Kennedy, 58 Texas, 616.

The legislature can change, abolish or enact rules of equity. Sumner v. Crawford, 91 Texas, 132; Ex parte Warfield, 40 Texas Crim. App., 419; Sullivan v. Dooley, 73 S. W. Rep., 82; Littleton v. Fritz, 65 Iowa, 488; State v. Iron Cliffs Co., 20 N. W. Rep., 493; State v. Durien, 46 Kan., 695; State v. Saunders, 66 N. H., 39; State v. Jordan, 72 Iowa, 377.

The district court has general jurisdiction over all causes of action for which a remedy or jurisdiction is not provided by law or the constitution. Art. 5, sec. 8, Texas Cons.; Gamel v. Smith, 3 Texas Civ. App., 23; Callaghan v. Tobin, 14 Texas Ct. Rep., 275.

Criminal acts may be enjoined. State of Texas v. Goodnight, 70 Texas, 685.

The legislature has power to provide for restraining any act that is injurious to the public morals or the general welfare. Railway Co. v. State, 79 Texas, 685; Mugler v. Kansas, 123 U. S., 207; Stone v. Miss., 101 U. S., 814.

That the act may also be criminal can not in any manner affect the validity or constitutionality of the injunction law. State of Texas v. Goodnight, 70 Texas, 685; Littleton v. Fritz, 65 Iowa, 488.

The statute here in question does not authorize an injunction to restrain the commission of a criminal offense; that is, the act restrained is not a crime. Carleton v. Rugg, 5 Law Rep. Ann., 195.

The relator can not complain that the injunction restrains him from committing crime. Ex parte Allison, 14 Texas Ct. Rep., 411; State v. Patterson, 14 Texas Civ. App., 468.

A court of equity has always been empowered to punish for contempt without regard for the fact that the same act may also be punished in a criminal court. State of Texas v. Goodnight, 70 Texas, 685; Littleton v. Fritz, 22 N. W. Rep., 644; Carleton v. Rugg, 5 Law Rep. Ann., 195; Mugler v. Kansas, 123 U. S. (Led.), 214; Eilenbecker v. Plymouth, 134 U. S., 31.

A public gaming house is a common nuisance under the common law. 2 Blackstone, 169; 2 Bouvier, 248; Wharton Criminal Law, 1465; 1

Bishop Crim. Law, 1135, 504, 7; State v. Patterson, 14 Texas Civ. App., 468; Ex parte Allison, 14 Texas Ct. Rep., 411; State v. Saunders, 66 N. H., 39; State v. Noyes, 30 N. H., 279; State v. Crawford, 28 Kan., 726; 2 Bishop Crim. Law, sec. 258.

A court of equity, since the reign of Elizabeth, has had jurisdiction to abate public nuisances, but it has refused to exercise this jurisdiction, unless a property or civil right was involved, save where commanded so to do by the legislature. State v. Patterson, 14 Texas Civ. App., 467; High on Injunctions, secs. 522, 525; 2 Story's Equity, sec. 921.

The district court has general jurisdiction to issue injunctions without regard to the amount or subject-matter of the suit. County of Anderson v. Kennedy, 58 Texas, 621; Gulf, C. & S. F. Railway v. Rawlins, 80 Texas, 580; Chambers v. Cannon, 62 Texas, 294; Stein v. Frieberg, 64 Texas, 272; Day v. Chambers, 62 Texas, 191; Seymour v. Hill, 67 Texas, 385.

GAINES, CHIEF JUSTICE.—This is a petition for the writ of habeas corpus, by which the relator seeks to have himself enlarged from the custody of the sheriff of McLennan County and restored to his liberty. It appears from the pleadings and exhibits in this court that one Minor Moore, a citizen of McLennan County, obtained from the judge of the Eighteenth Judicial District a temporary writ of injunction against the relator restraining him from the use of certain premises in the city of Waco for the purposes of gaming, or of keeping and exhibiting games prohibited by law. By order of the judge granting the writ, the petition was returned to one of the district courts of McLennan County and filed with the clerk thereof. Upon the final hearing in the latter court the injunction was made perpetual. Upon an affidavit filed by the plaintiff in the suit, alleging that respondent had violated the injunction, he was attached for contempt, and upon the hearing was adjudged guilty and fined $100. Upon default of payment of the fine, he was placed in the custody of the sheriff of the county—the respondent in the present suit.

The statute under which the original proceeding was instituted was passed at the regular session of the present legislature, and we quote so much of it as we deem necessary for the purposes of this opinion:

"The habitual use, actual, threatened or contemplated use of any premises, place, building, or part thereof, for the purpose of gaming or of keeping or of exhibiting games prohibited by the laws of this state, shall be enjoined at the suit either of the state or of any citizen thereof.

"Any person who may so use, or who may be about to use, or who may aid or abet any other person in the use of any premises, place or building, or part thereof, may be made a party defendant in such suit.

"Sec. 2. And provided, further, that nothing in the above proviso contained shall prevent such injunction from issuing at the suit of any citizen of this state who may sue in his own name, and such citizen shall not be required to show that he is personally injured by the acts complained of" (Acts 29th Leg., p. 372).

The validity of this statute is assailed by counsel for the relator upon

several grounds; but we are of the opinion that none of them are well taken. The first question in logical order, as we think, is whether the caption of the act is sufficiently full to meet the requirements of sec. 35 of art. 3 of our constitution. The title in question is as follows: "An Act to prevent, by means of the writ of injunction, at the suit of the state or any citizen thereof, the habitual use, actual, contemplated or threatened, of any premises, place, building, or part thereof, for the purpose of gaming or of keeping or exhibiting games prohibited by the laws of this state." This title, in our opinion, very clearly and fully expresses the one subject of the Act, and is therefore sufficient in that respect to sustain the statute.

It is also insisted on behalf of the relator that the legislature has no power to confer upon the courts the authority to enjoin the commission of crime or the establishment or continuance of a public nuisance. The legislature, when not restrained by the constitution of the state or of that of the United States, has the power to make the law and to provide remedies for its enforcement. We find no express provision in either of these instruments which prohibits the law-making power from either extending or abridging equitable remedies. The main argument against the power the legislature has attempted to exercise by the passage of the act in question is, that it deprives the defendant in the action of the right of trial by jury, and therefore violates the provision of our bill of rights, which declares that "the right of trial by jury shall remain inviolate." This may present a serious difficulty in those jurisdictions in which, as at common law, legal and equitable remedies were kept distinct and administered in separate courts. In courts of law the parties are entitled to have the issues of fact determined by a jury, which is not the case in a court of equity. Hence it might be that in such jurisdictions a statute which attempted to confer upon a court of equity the power to try a cause which was previously cognizable in a court of law, would be held obnoxious to the objection that it deprived the parties of the right of trial by jury. But under our system, in which law and equity are blended, and the right of trial by jury exists, whether the remedy be legal or equitable, the difficulty vanishes. Before the injunction could be made perpetual under the statute in question, it is the right of the defendant to have the jury pass upon the facts. It is true that in case of a violation of the injunction there is in the contempt proceedings no trial by jury; but no such right exists at common law in proceedings for contempt. Hence that does not contravene the provision which declares that "the right of trial by jury shall remain inviolate." That provision merely protects the right as it existed at the time the constitution went into effect.

Nor do we think that the act in question infringes that provision of the bill of rights which declares that "no person, for the same offense, shall be twice put in jeopardy of life or liberty." It is true that if he commits the act which he is enjoined from committing, and such act be a violation of the penal laws of the state, he may under this statute be punished for the contempt, and also for the violation of the criminal law. But these are not "the same offense." In the former case he is punished for a violation of the orders of the court; and in the latter for an of-

fense "against the peace and dignity of the state." One who makes an assault in the presence of the court, in such a manner as to constitute a contempt of court, is punishable, not only for the contempt, but also for the assault.

But it is also urged that the law is invalid for the reason that it gives the right to bring the action to any citizen of the state. We think this objection was well answered in the case of Littleton v. Fritz, 45 Iowa, 488, where the same point was made as to a similar statute. There the court say: "There can be no doubt that it is within the power of the legislature to designate the person or class of persons who may maintain actions to restrain and abate public nuisances, and when that is done, the action is for all purposes an action instituted in behalf of the public, the same as though brought by the attorney-general or public prosecutor. We are strongly inclined to think that in this case a decree for the defendant would be a bar to any other like action for an injunction, upon evidence of sales of liquor within the same time as is embraced in this action. The plaintiff is by law made the representative of the public in bringing and maintaining the action." (See, also, Carlton v. Rugg, 149 Mass., 550; Mugler v. Kansas, 123 U. S., 623; State v. Crawford, 28 Kan., 726.)

It is also urged in argument, in a somewhat indefinite way, that the enjoining of crimes or public nuisances was unknown to the common law, and that therefore the legislature was without power to provide for such injunction. This involves the question whether the procedure provided for in the act is "due course of the law of the land." This question has been answered by the Supreme Court of the United States in the case of Mugler v. Kansas, 123 U. S., 623. There the court say: "Equally untenable is the proposition that proceedings in equity for the purposes indicated in the thirteenth section of the statute are inconsistent with due process of law." "In regard to public nuisances," Mr. Justice Story says, "the jurisdiction of courts of equity seems to be of a very ancient date, and has been distinctly traced back to the reign of Queen Elizabeth. The jurisdiction is applicable not only to public nuisances, strictly so called, but also to purpresture upon public rights and property. . . . In case of public nuisances, properly so called, an indictment lies to abate them, and to punish the offenders. But an information, also, lies in equity to redress the grievances by way of injunction" (2 Story's Eq., secs. 921, 922). The ground of this jurisdiction in cases of purpresture, as well as of public nuisances, is the ability of courts of equity to give a more speedy, effectual and permanent remedy than can be had at law. They can not only prevent nuisances that are threatened, and before irreparable mischief ensues, but arrest or abate those in progress, and, by perpetual injunction, protect the public against them in the future; whereas courts of law can only reach existing nuisances, leaving future acts to be the subject of new prosecutions or proceedings. This is a salutary jurisdiction, especially where a nuisance affects the health, morals or safety of the community. Though not frequently exercised, the power undoubtedly exists in courts of equity thus to protect the public against injury." If it be asserted that the procedure for the prevention of crime is novel

and unknown to the common law, the answer is obvious. It seems that from the days of Edward the Confessor it was competent for any subject of the realm of England to cause any person to be brought before a magistrate, and to compel him to enter into an obligation, with sureties, to keep the peace, not only as against the complaining party, but also as against all persons in general. (4 Blackstone Com., 251.)

Besides the whole of title 3 of our Code of Criminal Procedure is devoted to the means for the prevention of crime, and provides very much of the same remedies as were allowed at common law. Such being the facts, we fail to see that there is any peculiarity about the writ of injunction, or any peculiar sanctity about criminal or quasi criminal acts, which debar the legislature from providing that one may be enjoined by a suit in equity from establishing a public nuisance—such as a gaming house.

We deem it unnecessary to pursue this discussion further. The principal objections urged against the validity of the act have been fully and ably discussed in the cases of Mugler v. Kansas, Littleton v. Fritz and Carlton v. Rugg, previously cited, and in all of which the validity of similar statutes was upheld. (See, also, State v. Saunders, 66 N. H., 39, in which the main question is exhaustively discussed in an opinion characteristic of that eminent court.) In this same case, upon a writ of habeas corpus sued out by this relator before our Court of Criminal Appeals, that court maintained the constitutionality of the act in question, and remanded the relator to the custody of the sheriff. That court within its jurisdiction is a court of equal dignity and authority with this court. Courts will not declare an act of the legislature invalid as being in conflict with the constitution unless it appear to them to be clearly so. For a stronger reason, they should not so declare where the validity of the statute has been upheld by another court of last resort.

In the application for the writ in this case, the fact that a previous writ had been sued out from the Court of Criminal Appeals, and that the relator had been remanded, appears upon the face of the petition. An exception was interposed by the respondent upon the ground that under our statutes the relator was not entitled to a second writ of habeas corpus. A majority of the court are inclined to think the objection well taken; but to this proposition Mr. Justice Williams is not prepared to accede. The decision of the question not being necessary to a determination of the case, we express no opinion upon it.

The prisoner is remanded to the custody of the sheriff of McLennan County.