[Crim. No. 2657. In Bank.—June 20, 1924.].

## In the Matter of the Application of LOUIS J. MORRIS for a Writ of Habeas Corpus.

[1] CONTEMPT — DISTINCTION BETWEEN CRIMINAL AND CIVIL CONTEMPTS—COMMON LAW.—Summary proceedings for the punishment of contempt upon a rule or citation have always been recognized as *sui generis,* frequently arising in connection with civil actions, often partaking somewhat of the character of civil remedies, and always partaking largely of the character of criminal prosecutions. These proceedings at the common law were spoken of as "criminal contempts" when they were directed primarily to the maintenance of the dignity and authority of the court, and as "civil contempts" when their primary object was the protection of the private rights of parties litigant.

[2] ID.—PUNISHMENT OF CRIMINAL AND CIVIL CONTEMPTS—RULES.— Both classes of contempts—"criminal contempts" and "civil contempts"—are contemplated by and provided for in the provisions of sections 1209 to 1222 of the Code of Civil Procedure, and are to be investigated and punished in the same manner and in accordance with the same rules.

[3] ID.—SECTION 166, PENAL CODE—CONSTRUCTION OF.—It is the plain intent of section 166 of the Penal Code, declaring that every person guilty of any contempt of court, of the kind therein specified, is guilty of a misdemeanor, to give another and different aspect to the contempts there enumerated and to expressly attach to each of them the definite quality of a criminal offense; and said section 166, when read in the light of sections 11, 657, and 658 of the Penal Code, shows that it was intended as a remedial statute.

[4] ID.—SECTION 1212, CODE OF CIVIL PROCEDURE—CONSTRUCTION OF.—
The provision in section 1212 of the Code of Civil Procedure that,
"No warrant of commitment can be issued without such previous
attachment to answer or such notice or order to show cause," re-
fers to a warrant of commitment issued pursuant to the procedure
prescribed in that title of the Code of Civil Procedure, rather
than to any commitment issued upon conviction of a criminal
offense pursuant to the provisions of the Penal Code.

[5] ID.—INTENT OF LEGISLATURE—CLASSES OF CONTEMPTS.—It was the
plain intent of the legislature expressed in sections 1209 to 1222
of the Code of Civil Procedure and section 166 of the Penal Code
to give a double aspect to the wrongful acts there enumerated;
in one aspect they are to be regarded as offenses against the
dignity and authority of the court, remediable in accordance with
the rules prescribed in the Code of Civil Procedure; in the other
aspect they are to be regarded as offenses against the peace and
dignity of the people of the state of California, and remediable
as such in accordance with the rules prescribed in the Penal Code;
and the same acts may at the same time take on a third aspect
in which they are to be regarded as offenses against private rights,
and remediable as such by an ordinary action at law.

[6] ID. — VIOLATION OF ORDER OF SUPERIOR COURT — PUNISHMENT BY
POLICE COURT—JURISDICTION—CUMULATIVE REMEDY.—Under subdi-
vision 4 of section 166 of the Penal Code, declaring in substance
that a person guilty of contempt of court consisting of a "willful
disobedience of any process or order lawfully issued by any court"
is guilty of a misdemeanor, a police court has jurisdiction to
punish as a contempt the violation of an injunctive order issued
by a superior court, the legislature not having intended to take
away from the superior court the power to punish a violator of
its orders, but having intended rather to provide an additional
remedy which should be in a sense cumulative, and which should
be available in the courts possessing the appropriate criminal
jurisdiction.

[7] ID.—VIOLATIONS OF SAME ORDER—JURISDICTION—ONCE IN JEOP-
ARDY.—The defense of once in jeopardy does not lie in a case
where one punished in the police court for contempt in violating
an order of the superior court is brought before said superior
court to answer for the same act as a contempt of the latter
court, since the two offenses are distinct and different, even though
the act out of which they arise be the same.

(1) 13 C. J., pp. 56, 57, 58, 59, secs. 80, 81.   (2) 13 C. J., p. 59,
sec. 81 (1926 Anno.).   (3) 13 C. J., p. 7, sec. 7.   (4) 13 C. J., p. 69,
sec. 93 (1926 Anno.).   (5) 13 C. J., p. 59, sec. 81.   (6) 13 C. J.,
pp. 52, 55, secs. 69, 77 (1926 Anno.).   (7) 13 C. J., p. 56, sec. 78.

PROCEEDING in Habeas Corpus to secure release of petitioner from custody on a charge of violating section 166 of the Penal Code. Writ discharged.

The facts are stated in the opinion of the court.

R. W. Henderson and L. B. Schlingheyde for Petitioner.

J. M. Friedlander, W. V. Cowan and U. S. Webb, Attorney-General, for Respondent.

MYERS, C. J.—This matter comes before us on a writ of *habeas corpus.* The petitioner was charged, tried, and convicted in the police court of the city of Los Angeles, was sentenced to pay a fine of $250, and, in default of payment, to suffer ninety days' imprisonment in the city jail. He was charged with a misdemeanor under section 166, subdivision 4, of the Penal Code, which is as follows:

"Every person guilty of any contempt of court, of either of the following kinds, is guilty of a misdemeanor: . . .

"4. Willful disobedience of any process or order lawfully issued by any court; . . . "

He was specifically charged with the willful disobedience of an order and injunction issued out of the superior court in and for the county of Sacramento in an action wherein the people of the State of California on the relation of the attorney-general was plaintiff against the Industrial Workers of the World, et al., defendants. The petitioner disputes the constitutionality of the Penal Code section as interpreted by the prosecution, denies the jurisdiction of the police court over the proceeding here in question, and attacks the validity of the injunction which he is charged with violating. All of the questions raised by petitioner in his attack upon the validity of the injunction were raised and considered by this court and resolved against petitioner's contentions in the case of *In re Wood, ante,* p. 49 [227 Pac. 908], which involved the same injunction here in question.

Petitioner contends that section 166 of the Penal Code should be construed as simply declaratory of the common law which designated criminal contempts as misdemeanors,

194 Cal.—5

and that if it be construed as a remedial statute it must be held unconstitutional because it deprives the superior and appellate courts of the power to enforce their judgments and orders and to punish infractions of their dignity and authority. In support of his first contention petitioner calls attention to the circumstance, which has long been recognized, that contempts are of two kinds, which have been designated respectively as "criminal contempts" and "civil contempts." From this he deduces the conclusion that the dual procedure for the punishment of these two kinds of contempts is reflected in the provisions of the Code of Civil Procedure (secs. 1209 to 1222, Code Civ. Proc.) as applicable to civil contempts, and the Penal Code section as applicable to criminal contempts. Herein petitioner fails to recognize the difference between the classification of contempts known to the common law as "criminal contempts" and "civil contempts" on the one hand, and the classification thereof which might be made with reference to the provisions of our codes whereby contempts referred to in the Code of Civil Procedure might be termed "civil contempts" and those enumerated in the Penal Code "criminal contempts." [1] Summary proceedings for the punishment of contempt upon a rule or citation have always been recognized as *sui generis*, frequently arising in connection with civil actions, often partaking somewhat of the character of civil remedies, and always partaking largely of the character of criminal prosecutions. (*Hotaling* v. *Superior Court*, 191 Cal. 501 [29 A. L. R. 127, 217 Pac. 73], and cases there cited.) These proceedings at the common law were spoken of as "criminal contempts" when they were directed primarily to the maintenance of the dignity and authority of the court, and as "civil contempts" when their primary object was the protection of the private rights of parties litigant. This distinction is clearly pointed out in *Bessette* v. *W. B. Conkey Co.*, 194 U. S. 324 [48 L. Ed. 997, 24 Sup. Ct. Rep. 665, see, also, Rose's U. S. Notes], wherein it is said: "The exercise of this power [to punish for contempt] has a twofold aspect, namely, first, the proper punishment of the guilty party for his disrespect to the court or its order, and the second, to compel his performance of some act or duty required of him by the court, which he refuses to perform . . . Proceedings for contempts are of two

classes, those prosecuted to preserve the power and vindicate the dignity of the courts and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts and the people are interested in their prosecution. The latter are civil, remedial and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect or enforce." (For an exhaustive review of the cases upon this subject see *State* v. *Magee Pub. Co.* (N. M.), 224 Pac. 1028.) **[2]** Both of these classes of contempts are contemplated by and provided for in the provisions of our Code of Civil Procedure, above cited, and are to be investigated and punished in the same manner and in accordance with the same rules. **[3]** It is the plain intent of section 166 of the Penal Code, however, to give another and different aspect to the contempts there enumerated and to expressly attach to each of them the definite quality of a criminal offense. This intent is made certain when we refer to other sections of the same code. Section 11 thereof provides that, "This code does not affect any power conferred by law upon . . . any public body, tribunal or officer to impose or inflict punishment for a contempt." Section 657 provides, "A criminal act is not the less punishable as a crime because it is also declared to be punishable as a contempt." Section 658, "When it appears, at the time of passing sentence upon a person convicted upon indictment, that such person has already paid a fine or suffered an imprisonment for the act of which he stands convicted, under an order adjudging it a contempt, the court authorized to pass sentence may mitigate the punishment to be imposed, in its discretion." A reading of section 166 in the light of the other sections quoted leaves no room to doubt that it was intended as a remedial statute. **[4]** The provision in section 1212 of the Code of Civil Procedure, that, "No warrant of commitment can be issued without such previous attachment to answer or such notice or order to show cause," obviously refers to a warrant of commitment issued pursuant to the

procedure prescribed in that title of the Code of Civil Procedure, rather than to any commitment issued upon conviction of a criminal offense pursuant to the provisions of the Penal Code.

Petitioner's contentions that the Penal Code section construed as remedial is unconstitutional and that the police court was without jurisdiction of this proceeding are so interwoven that they may well be considered together. Petitioner concedes that the legislature might prescribe two remedies for the punishment of contempt, "provided, of course, that only the court whose order was contemned had jurisdiction." The quoted proviso contains the kernel of his argument. It is, briefly stated, that the power to punish for contempt of its authority inheres in every court of record as an essential element of the jurisdiction vested in it by the constitution, without which it could not adequately function as a court; that by reason of the fundamental nature and purpose of this power it must be vested in each instance in that particular court whose order or authority has been contemned; that the legislature has no authority to take from the courts this essential power, that the attempt of the legislature to confer upon a police court the jurisdiction to punish a contempt consisting in the violation of an order of the superior court is in effect an attempt to take from the superior court an essential portion of its constitutional authority and is therefore void. From these premises petitioner deduces the conclusion that the jurisdiction to punish as a contempt the violation of an order issued by the superior court of Sacramento County is vested solely and exclusively in that court. If we were to regard petitioner's act solely as an offense against the dignity and authority of that court, we would agree with this conclusion, and the cases so hold. (*Ex parte Bradley*, 7 Wall. (U. S.) 364 [19 L. Ed. 214]; *Bessette* v. *W. B. Conkey Co.*, 194 U. S. 324 [48 L. Ed. 997, 24 Sup. Ct. Rep. 665, see, also, Rose's U. S. Notes]; *People* v. *County Judge of Placer Co.*, 27 Cal. 152; *Farmers' State Bank* v. *State*, 13 Okl. Cr. 283 [L. R. A. 1917E, 551, 164 Pac. 132]; *Greene* v. *Edgington*, 37 Idaho, 1 [214 Pac. 751].) But these cases do not hold that when an act which is a contempt of court is at the same time a specific criminal offense, denounced as such in the Penal Code, it will not be punishable as such.

[5] It was the plain intent of the legislature expressed in the cited code sections to give a double aspect to the wrongful acts there enumerated. In one aspect they are to be regarded as offenses against the dignity and authority of the court, remediable in accordance with the rules prescribed in the Code of Civil Procedure. In the other aspect they are to be regarded as offenses against the peace and dignity of the people of the state of California, and remediable as such in accordance with the rules prescribed in the Penal Code. It is apparent upon reflection that the same act may at the same time take on a third aspect in which it is to be regarded as an offense against private rights, and remediable as such by an ordinary action at law. [6] Plainly the legislature did not intend to take away from the court contemned the power to punish a violator of its orders, but intended rather to provide an additional remedy which should be in a sense cumulative, and which should be available in the courts possessing the appropriate criminal jurisdiction. These remedies were not intended to be concurrent, but rather cumulative in character, though not strictly so, because each remedy is for a different offense, though the two offenses arise out of the same act.

Petitioner asserts that, regardless of the legislative intent, if we hold that jurisdiction herein was vested in the police court, the inevitable effect thereof will be to deprive the superior court of the power to punish its own contemners. He asserts that he, having been placed on trial in the police court, if thereafter haled before the superior court at Sacramento to answer for the same act as a contempt of that court, could then interpose a plea of once in jeopardy as a complete defense to that proceeding. He argues that the effect thereof would be to deprive the superior court of the power to punish for a violation of its own orders, because the violator, by the simple expedient of procuring himself to be charged in a police court or justice's court and there assessed a small penalty, could render himself immune to punishment by the court which he had contemned. The reasoning is sound, but it rests upon a false premise. [7] The defense of once in jeopardy would not lie in such case because the two offenses are distinct and different, even though the act out of which they arise be the same. We find no authority which holds contrary to this con-

clusion. The cases cited by petitioner (*In re Breen*, 30 Nev. 186 [93 Pac. 1004]; *McGovern* v. *United States*, 280 Fed. 73; *State* v. *Clancy*, 30 Mont. 193 [76 Pac. 10]), do not so hold. Petitioner quotes from 8 R. C. L. 136, 137, but overlooks the following language at pages 137, 138: "Sometimes, however, a criminal act involves an injury to property rights, and when this is the case the act may be enjoined, if the party would not have an adequate remedy at law. Sometimes also statutes authorize injunctions against criminal acts, and when such an injunction has been issued, whether on the ground of preventing irremediable injury to property, or by statutory authority to prevent crime, the rule as to former jeopardy cannot be invoked on the ground that the same act is punishable both as a contempt of court and as a crime. The two offenses are not the same." In *Bessette* v. *W. B. Conkey Co., supra* (194 U. S. 330 [48 L. Ed. 997, 24 Sup. Ct. Rep. 667]), the supreme court of the United States readopted a summary of its conclusions, arrived at in *In re Debs*, 158 U. S. 564 [39 L. Ed. 1092, 15 Sup. Ct. Rep. 900, see, also, Rose's U. S. Notes], in the following language: "That the proceeding by injunction is of a civil character and may be enforced by proceedings in contempt; that such proceedings are not in execution of the criminal laws of the land; *that the penalty for a violation of injunction is no substitute for and no defense to a prosecution for any criminal offense committed in the course of such violation.*" (Italics added.) The case of *Ex parte Allison*, 99 Tex. 455 [122 Am. St. Rep. 653, 90 S. W. 870], is direct authority for our conclusion herein. The question of "twice in jeopardy" in relation to an injunction forbidding the commission of a crime was there directly presented for decision, and the court said: "Nor do we think that the act in question infringes that provision of the bill of rights which declares that 'no person, for the same offense, shall be twice put in jeopardy of life or liberty.' It is true that, if he commits the act which he is enjoined from committing, and such act be a violation of the penal laws, he may, under this statute, be punished for the contempt, and also for the violation of the criminal law. But these are not 'the same offense.' In the former case he is punished for the violation of the orders of the court, and in the latter for an offense 'against the peace

and dignity of the state.'" In the note to this case (2 L. R. A. (N. S.) 1111), the annotator sums up the authorities in the statement "that a statute authorizing the issuance of an injunction against an act which is also punishable as a violation of criminal law is not open to objection, as twice putting a person in jeopardy for the same offense, seems never to have been questioned." In *People* v. *Mead*, 92 N. Y. 415, the defendant was indicted in one court upon a misdemeanor charge of contempt, consisting in the willful disobedience of an order which had been issued by another court. The indictment was based on section 143 of the New York Penal Code, which is identical with our section 166. All of our Penal Code sections bearing on the questions here under consideration were borrowed from the corresponding sections of the New York Penal Code, based on Field's draft. That case is therefore on all-fours with the one at bar. The court of appeals held that the defendant was subject to prosecution in that manner, saying:

"It was not necessary to the validity of the indictment that the accused should have been adjudged in contempt by the court whose process he disobeyed. The two proceedings are wholly independent of each other. One who disobeys the lawful order of a court not only offends against the dignity of the particular tribunal, but also against the public law. The particular court may pass over the contempt and suffer its order to be spurned, but the offense against the public remains. Their authority has been contemned, the administration of public justice assailed, and its power despised. For such an offense the guilty party may be punished by indictment, although the court whose order has been disobeyed may take the indignity in silence. The statute has made such disobedience, when willful in its character, an offense against the people, and not left it dependent upon the action or nonaction of the specific judge or court. The statute contemplates that both remedies or either may be pursued."

In *State* v. *Clancy*, 30 Mont. 193 [76 Pac. 10], cited by petitioner herein, the court said: "When prosecuted under the Code of Civil Procedure, a contempt of court is not to be regarded as a criminal offense, to be prosecuted only by complaint, information, or indictment, as laid down by section 8 of article 3 of the state constitution, but, rather,

as a special proceeding of a criminal character. . . . Furthermore, the same acts which may be punished in the summary proceeding are characterized by the law-making power as criminal and the additional remedy by an ordinary criminal action is provided for in Penal Code, section 293.'' (This is the same as our Penal Code, section 166. The Montana code also contains sections identical with our 657 and 658. See, also, *State ex rel. Duensing* v. *Roby,* 142 Ind. 168 [51 Am. St. Rep. 174, 33 L. R. A. 213, 41 N. E. 145]; *State ex rel. Zehner* v. *Vankirk,* 27 Ind. 121.)

The precise question here under consideration does not appear to have been directly decided by the courts of this state, but the answer thereto is forecasted in the language of some of the decisions. In *Ex parte Acock,* 84 Cal. 50 [23 Pac. 1029], this court said: ''The fact that the petitioner may be prosecuted in criminal and civil actions does not prevent a prosecution for contempt. A party may be liable civilly and criminally for an assault upon an officer in open court, and at the same time may be punished for the indignity laid upon the court.''

In *Selowsky* v. *Superior Court,* 180 Cal. 404, 411 [181 Pac. 652, 656], the court said: ''Nor can the statute [the Red-light Abatement Act] be assailed on the theory that it conflicts with section 1218 of the Code of Civil Procedure. That section cannot be said to purport to fix the penalty for all contempts. Indeed, the next succeeding section provides a different punishment for certain classes of contempts, while a still different punishment is provided in the Penal Code for the contempts enumerated in section 166 thereof.''

In *Ex parte Karlson,* 160 Cal. 378, 383 [Ann. Cas. 1912D, 1334, 117 Pac. 447, 449], the following language was used: ''The Penal Code declares, in effect, that the provision that no act shall be punishable as a crime except such as may be made a crime by statute, and then only in the manner prescribed or authorized by statute (sec. 6), shall not apply to contempts punishable under section 1209 of the Code of Civil Procedure (sec. 11). It necessarily follows that the Penal Code has no application to a civil contempt, and that the question whether the particular act is punishable as a criminal contempt or not, under section 166 of the

Penal Code, is immaterial to any inquiry arising in a contempt proceeding under section 1209. If, after such punishment in such civil proceeding, a person is convicted of the same act as a crime under said section 166, the former punishment may mitigate the severity of the sentence upon the subsequent conviction. (Pen. Code, sec. 658.)''

We conclude that section 166 of the Penal Code is a remedial statute; that the remedy thus provided is intended to be cumulative or, rather, in addition to the remedies provided by the title of the Code of Civil Procedure on contempts; that the offenses denounced in the former code provision are separate and distinct from those denounced in the latter, and the question of ''once in jeopardy'' does not arise thereunder.

The writ is discharged and the petitioner remanded.

Richards, J., Seawell, J., Waste, J., Lawlor, J., Lennon, J., and Shenk, J., concurred.