STATE ex rel. RANKIN, Relator, *v.* DISTRICT COURT
ET AL., Respondents.

(No. 4,641.)

(Submitted May 24, 1920. Decided July 9, 1920.)

[191 Pac. 772.]

*Certiorari—Attorneys—Contempt—Judgment—Contents—Insufficiency—Power of Courts—Power of Legislature—Record.*

Contempt—Attorneys—Judgment—Insufficiency.
　　1. *Held,* on *certiorari,* that an order adjudging an attorney guilty of a direct contempt in that he had been insulting and impudent in his remarks to the court; that, though admonished a number of times not to repeat a question to a witness, he nevertheless repeated it each time; that while the court was undertaking to make remarks, it was interrupted by contemnor; and that his manner throughout the trial had been such as to bring the court in contempt and interfere with the proper administration of justice, was insufficient to meet the requirements of section 7311, Revised Codes, which provides that the court shall set out the facts—not conclusions—which occurred, from which, on review, it may be determined whether the court had jurisdiction to subject the contemnor to the payment of a fine or commit him to jail.

Same—Nature of Proceeding.
　　2. Proceedings in direct and indirect contempts are criminal in their nature, and the power to inflict punishment in either is inherent in the courts.

Same—Duty of Attorneys.
　　3. Attorneys are, in a sense, 'officers of the court, and upon them, above all others, rests the duty to maintain its dignity, the obligation to do so being clearly implied in the oath subscribed by them when entering the practice.

Same—Power of District Court—How to be Exercised.
　　4. The power of a court to punish for contempt is not an arbitrary one, but is to be exercised only when the necessity arises, and then with an intelligent discretion to serve its purpose, under the rules of procedure established by the usages of the courts or prescribed by the statute.

Same—Power of Legislature.
　　5. The legislature may prescribe the modes of procedure in contempt proceedings, but cannot take away or abridge the power of courts to inflict punishment therefor.

Same—Courts must Pursue Statute—Record.
　　6. Courts in inflicting punishment for contempt must pursue the mode of procedure prescribed by the statute, to the end that upon the record made, the contemnor may apply to the appellate tribunal for a review of the order or judgment finding him guilty.

Same—Remedies of Contemnor.
7. One adjudged guilty of a contempt of court may have the proceedings reviewed on application for writ of *certiorari* or supervisory control.

Same—Procedure—Purpose of Statute.
8. *Held*, that the purpose of section 7311, Revised Codes, providing the procedure to be observed by courts in direct contempts, is to prescribe what record must be made to evidence the legality and regularity of the proceeding.

Indirect Contempts—Record.
9. In indirect contempts, the record consists of the affidavit setting forth the facts constituting the contempt, the process, the answer of the contemnor, the evidence, and the judgment.

Direct Contempts—Record.
10. The only record made in a case of a direct contempt is the judgment, which must recite the facts showing the contemptuous words, acts or manner, its validity being tested by the recital thus made, and not by evidence supplemental thereto or by facts certified up in the return made by the judge on writ of *certiorari*, or by the record in the case on trial at the time the contempt was committed.

Contempt—Attorneys may Explain Conduct Before Court Pronounces Judgment.
11. Before an attorney is adjudged in contempt, he should be accorded an opportunity to explain or excuse his contempt and thus purge himself or show that no contempt was intended.

*Certiorari* by the State, on the relation of Wellington D. Rankin, against the District Court of the First Judicial District in and for the County of Lewis and Clark and R. Lee Word, a Judge thereof, to review an order adjudging relator guilty of contempt. Order annulled.

*Mr. William T. Pigott, Mr. Henry Smith, Mr. C. A. Spaulding* and *Mr. A. P. Heywood,* for Relator, submitted a brief; *Mr. Pigott* and *Mr. Smith* argued the cause orally.

The judgment sought to be annulled is void upon its face. It fails to state any facts showing a contempt. This is manifest from a mere inspection of the judgment, which contains the sole record before this court beyond which this court may not look. (*State ex rel. Breen* v. *District Court,* 34 Mont. 107, 85 Pac. 870; *In re Mettler,* 50 Mont. 299, 146 Pac. 747.; see, also, *Ex parte Rowe,* 7 Cal. 175; *Ex parte Hoar,* 146 Cal. 132, 79 Pac. 853; *Overend* v. *Superior Court,* 131 Cal. 280, 63 Pac. 372; *Cress* v. *State,* 14 Okl. Cr. 521, 173 Pac. 854; *Platnauer* v. *Superior Court,* 32 Cal. App. 463, 163 Pac. 237;

*Crites* v. *State,* 74 Neb. 687, 105 N. W. 469; *In re McCarty,* 154 Cal. 534, 98 Pac. 540.)

The court did not ask relator what, if anything, he had to say why he should not be punished for contempt. In cases of direct contempt, "the better practice seems to obtain, even in flagrant offenses of this character, of granting the contemnor an opportunity of explanation or excuse" (4 Ency. Pl. & Pr. 789), so that he may purge himself or show that no contempt was intended. The mandatory provision of section 9366, Revised Codes, that one found guilty of a crime must be asked by the court "whether he has any legal cause to show why judgment should not be pronounced against him," while perhaps by its terms not applicable to the case of a contemnor, is, by analogy, applicable to one convicted of a criminal contempt and sentenced to prison as a part of his punishment, for he is, in the eye of the law, a criminal and suffers as such.

*Messrs. Day, Mapes & Loble, Messrs. McIntire & Murphy, Messrs. Gaten & Mettler, Mr. M. S. Gunn, Mr. Jas. A. Walsh, Mr. O. W. McConnell, Mr. H. S. Hepner, Mr. Jos. R. Wine* and *Mr. Geo. W. Padbury,* for Respondents, submitted a brief; *Mr. H. G. McIntire* argued the cause orally.

The statutory provisions concerning the writ of *certiorari* are Rev. Codes, section 7202 *et seq.* Section 7206 prescribes its contents. This section, identical with section 1071 of the California Code of Civil Procedure, was evidently adopted from that state, and under a familiar rule the construction of it by the supreme court of that state was adopted also. What, then, constitutes "the *record and proceedings*" in a case such as this? The authorities are harmonious in answer to this question. Thus in 2 Spelling on Injunctions and Other Extraordinary Remedies, second edition, section 2005, it is said: "The return must, in itself, contain a complete history of the proceedings; * * * No more of the facts need be returned than are necessary to determine upon the point of jurisdiction, or other question of law arising in the course of the proceed-

ings." And in 11 Corpus Juris, Title "Certiorari," pages 174, 175, it is said as to the contents of the return: "It must show, in a court proceeding, the rendition of a judgment. It must also disclose something on which the reviewing court can act. It should contain specific statement of facts, and not conclusions or opinions, and must be sufficient to enable the reviewing court to pass on the legality of the proceedings below." And further, in the same work on pages 176, 177: "Since the main office of the writ is to confine the actions of inferior tribunals and boards within the limits of their delegated powers, the reviewing court must re-examine their decisions on all questions on which their jurisdiction depends, whether of law or of fact. Accordingly, the evidence touching the facts on which the jurisdiction of the inferior court or tribunal depends must be returned, to enable the reviewing court to examine the same and to determine whether jurisdiction was lawfully assumed."

In the case of *Schwartz* v. *Superior Court,* 111 Cal. 106, 43 Pac. 580, 581, decided in 1896, which involved a review of a contempt order under the California statutes concerning contempts, which also are identical with those of Montana, our Revised Codes, section 7311, being identical with California Code of Civil Procedure, section 1211, the supreme court of that state says: "The objection that we are not at liberty to go beyond the recitals or findings in the judgment itself, in reviewing the action of the court below, is not well taken. While the writ of review is not a writ of error, and is not a means by which, as upon appeal, the mere manner of conducting the proceedings, the rulings of the court upon questions of evidence, and other matters within the jurisdiction, involving the merits, however erroneous they may be, can be reviewed, it is, nevertheless, a means by which the power of the court in the premises can be inquired into; and for this purpose the review extends, not only to the whole of the record of the court below, but even to the evidence itself, where necessary to determine the jurisdictional fact." This case was

affirmed and followed in *Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180, 149 Pac. 35, 38, decided in 1915. And the course here pursued is the same as that followed in *Platnauer* v. *Superior Court,* 32 Cal. App. 463, 163 Pac. 237, 240, and in *State* v. *Mayor of City of Butte* (Mont.), 188 Pac. 367. This being, as we submit, the established principle as to what is a proper return to a writ of *certiorari* and a contempt proceeding being reviewable only under such a writ (Rev. Codes, sec. 7322), it follows that recourse in the present instance can and should be had to all of the record as contained in the return. (See *State ex rel. Zosel* v. *District Court,* 56 Mont. 578, 185 Pac. 1112.)

Relator's counsel seem to rely solely on *State ex rel. Breen* v. *District Court,* 34 Mont. 107, 85 Pac. 870, and *In re Mettler,* 50 Mont. 299, 146 Pac. 747, as establishing a different procedure from that above set forth for contempt cases, but we find nothing in either of those cases that shows that a return such as the one in this case was there had, or, for that matter, that the point was either suggested or relied on. If, however, the contrary was intended, then we beg to remind the court that "Infallibility is to be conceded to no tribunal. A legal principle to be well settled must be founded on sound reason. Precedents are to be regarded as the great storehouse of experience, not always to be followed but to be looked to as beacon lights in the progress of judicial investigation." (*Leavitt* v. *Morrow,* 6 Ohio St. 71, 78, 67 Am. Dec. 334.) And "when a court comes to the deliberate conclusion that it has made a mistake, it is better * * * that it frankly acknowledge its mistake and declare the true doctrine as it should have done." (*Hines* v. *Driver,* 89 Ind. 339.)

Counsel for relator contend that the characterization of the order or judgment of contempt sought to be reviewed whereby the manner or demeanor of relator during the trial is stated to have been "insulting and impudent" to the court states no fact; that there is nothing in those words upon which a deduction of contempt can be predicated, and that the judg-

ment in that behalf is void. We submit that in this regard counsel for relator are in error. Referring to 13 Corpus Juris, Title "Contempt," pages 7, 8, we find it stated: "Contempt may .be shown either by language or manner. Language not in itself contemptuous may become so if uttered in an insolent or defiant manner, and in determining whether the language used was or was not a contempt, regard must be had not merely to the very words used, but to the surrounding circumstances, the connection in which they were used, the tone, the look, the manner, and the emphasis." And in support of the text there is appended the following footnotes: "Thus contempt of court may be committed by innuendo and insinuation, and may consist of maliciously saying or doing anything that will have a tendency of inducing others to disregard the authority of the court. (*Gompers* v. *Buck's Stove etc. Co.,* 33 App. Cas. (D. C.) 516.)" (See, also, *Wilson's Case,* 7 Q. B. 984, 115 Eng. Reprint, 759, quoted with approval in *Holman* v. *State,* 105 Ind. 513, 5 N. E. 556, 558.) We are aware that in the *Breen Case* and in the *Mettler Case, supra,* this court has apparently come to another conclusion, but in view of the fact that the intangible thing designated as manner, or demeanor, cannot be so depicted in words as to present what actually occurred, and in view of the further fact that we cannot bring ourselves to the belief that this court has advisedly done away with one of the greatest safeguards thrown around the courts in the administration of justice, *i. e.,* gentlemanly conduct on the part of all coming in their presence, we do not hesitate to request that this court reconsider the holding of said cases.

Proceedings for the adjudication and punishment of contempts are supposed to rest for their determination on the statute. A brief review of it is therefore not out of place. It is section 7311 of the Revised Codes. There is no question that the provision of the California statute is identical with this, nor can it be disputed that the courts of that state, as well as of Montana, have construed it as meaning that the

order must recite the facts constituting the contempt. But let us see as to this. When it is borne in mind that it is a matter of self-preservation, of self-defense for the courts to possess the power to maintain in the utmost degree the orderly conduct of the business transacted before them; that this power is inherent, and has been conceded as existent at all times since courts were established, it is self-evident, we submit, that any statute attempting to prescribe the manner in which the power is to be exercised must be strictly construed. Being this, where in said statute are there any words warranting the conclusion that the facts constituting the contempt must be stated in the order? The words of the statute are, "an order must be made reciting the facts *as* occurring in such view and presence." It is familiar law that in construing a statute all the words thereof are to be given, if possible, a proper significance—none can be omitted. The word "as" is such a word. There can be no doubt of its meaning. The lexicographers define it as meaning "at or during the time when; while; when; during; giving relations of time (as, he came while we were dining)." A further definition is, "For the reason that; it being the case that; because; since." (Standard Unabridged Dictionary.) It is an adverb, then, relating to time and place only, and so used in this statute, we submit, it makes the statute plainly mean that the order shall state the time and place of the contempt and not the facts constituting it. That this construction is in harmony with authority, see *Hale* v. *State,* 55 Ohio St. 210, 60 Am. St. Rep. 691, 36 L. R. A. 254, 45 N. E. 199.

If despite the foregoing this court should be of the opinion that there was not a full compliance with Rev. Codes, section 7311, *supra,* then the question presents itself, Is said section, at least in so far as it relates to contempts committed *in facie curiae,* and the punishment thereof, a valid exercise of the legislative branch of the government and binding on the judicial branch? In a well-considered case, also one involving a conviction for contempt of court, *Holman* v. *State,*

105 Ind. 513, 5 N. E. 556, 557, the court answers this question in the negative. This entire subject has been so thoroughly covered by the late cases, *e. g., Carter* v. *Commonwealth,* 96 Va. 791, 45 L. R. A. 310, 32 S. E. 780; *Bradley* v. *State,* 111 Ga. 168, 78 Am. St. Rep. 157, 50 L. R. A. 691, 36 S. E. 630; *Smith* v. *Speed,* 11 Okl. 95, 55 L. R. A. 402, 66 Pac. 511; *Chicago, B. & Q. Ry. Co.* v. *Gildersleeve,* 219 Mo. 170, 16 Ann. Cas. 749, and the footnotes accompanying them, that it would savor of pedantry to dwell further on it.

## Opinion—PER CURIAM.

*Certiorari* to the district court of Lewis and Clark county to review an order adjudging Wellington D. Rankin, Esq., an attorney at law, guilty of contempt.

On May 23, 1920, during the trial of a cause entitled *The* [1] *State of Montana* v. *D. E. Rainville,* in the above-named district court, the court made and entered the following order:

"The trial of this cause was this day resumed; present J. R. Wine, Esq., county attorney, George W. Padbury, Jr., assistant county attorney for the state, and the defendant with his counsel, Wellington D. Rankin, Esq., and A. H. McConnell, Esq., and the jury. Thereupon Dr. E. D. Hitchcock resumed his testimony on behalf of the state. Thereupon Dr. B. V. McCabe was called, duly sworn, and testified on behalf of the state. Thereupon, by reason of remark of Wellington D. Rankin, Esq., counsel for the defendant, the further taking of testimony was deferred and the bailiff instructed to remove the jury from the courtroom. Whereupon the court, upon finding that counsel could not be restrained as to his remarks, the court finds that in the first part of the trial when the question came up as to the position of counsel, Wellington D. Rankin, of counsel for defendant in this case, was insulting and impudent to the court in his remarks in the presence of those in the courtroom and in the presence of the jury.

"The court holds, and so finds, that in the first part of the trial when the question came up as to the position of counsel,

Wellington D. Rankin, of counsel in this case, was insulting and impudent to the court in his remarks in the presence of those in the courtroom and in the presence of the jury.

"The court finds, and again declares, that again on yesterday three times the court had to admonish counsel that the question covered by his question had already been ruled upon by the court and it was not further necessary for him to put the questions in order to preserve his record. Three times afterward he put the same question.

"The court further finds that when a question was put by the counsel, Rankin, to the witness upon the stand, and the court was not clear from the question as to what he meant and the court made remark with reference to it, counsel was insulting and impudent to the court.

"The court further finds, and so declares, and the record will show, that three times in the course of this trial and while the court was attempting and undertaking to make remarks—remarks pertinent to the case—he was interrupted by counsel, Wellington D. Rankin.

"The court further finds, and so declares, that his manner all through has been insulting and the effect has been to lower the court in the opinion of those present, to bring the court in contempt, and to interfere with the proper administration of justice.

"Stand up, Wellington D. Rankin. The court finds you guilty of contempt, and it is the order, judgment, and sentence of this court that you be confined for 48 hours in the jail of Lewis and Clark county, and that you pay a fine of $250, and you are remanded to the custody of the sheriff to see the sentence executed."

Mr. Rankin, having been committed to jail, brought this proceeding to have the order annulled on the ground that it is void on the face, in that it does not recite the facts as they occurred at the time it was made, as required by the statute. On application for *habeas corpus* at the same time, the relator was admitted to bail pending final hearing.

The orders examined in the cases of *State ex rel. Breen* v. *District Court,* 34 Mont. 107, 85 Pac. 870, and *In re Mettler* 50 Mont. 299, 146 Pac. 747, were in form and substance the same as the one here complained of. Both of them inflicted punishment for direct contempts, under section 7311 of the Revised Codes. The one in the *Breen Case* was before this court on *certiorari.* It was declared void, the court saying of it: "The conviction here was for a direct contempt. The judgment, however, is wholly insufficient to meet the requirements of the statute. It does not contain, even by appropriate reference to the proceedings before the court, anything to show what the matters referred to as scandalous were, nor any fact tending to show what the manner of the relator was. It states conclusions and inferences only, drawn by the judge from the facts as they actually transpired, thus leaving this court no alternative but to accept these conclusions or to hold the order invalid. The purpose of the statute is to require the court to set forth the jurisdictional facts, so that the propriety of the judgment of conviction may be examined and reviewed. If adjudged sufficient as it stands, the order complained of would be conclusive upon this court, and review of it, as to the sufficiency of the facts to put the power of the court in motion, would be impossible."

The case of *In re Mettler* was an application for *habeas corpus.* The complainant was held entitled to his release on the ground that the order was void. The court, speaking through Mr. Justice Holloway, quoted with approval the paragraph above from the opinion in the *Breen Case* as embodying the correct construction of the statute. These cases are conclusive of the insufficiency of the order in this case. The following decisions from other jurisdictions fully sustain the conclusion announced in those cases: *Ex parte Rowe,* 7 Cal. 181; *In re Shortridge,* 5 Cal. App. 379, 90 Pac. 478; *Cress* v. *State,* 14 Okl. Cr. 521, 173 Pac. 854; *Crites* v. *State,* 74 Neb. 687, 105 N. W. 469; *In re Shull,* 221 Mo. 623, 133 Am. St. Rep. 496, 121 S. W. 10; *Ex parte Hoar,* 146 Cal. 132, 79 Pac. 853;

*In re Coulter*, 25 Wash. 529, 65 Pac. 759; *State* v. *District Court*, 124 Iowa, 187, 99 N. W. 712. Relator is therefore entitled to have the order annulled.

Counsel for respondents insist, however: (1) That, though the facts are defectively stated in the order, sufficient are stated to uphold it, and if not, (2) that reference may be made to the portions of the evidence in the case of *State* v. *Rainville*, certified in the return to the writ, to ascertain what was said and done prior to and at the time the order was made, for the purpose of upholding it. Neither of these contentions can be maintained. In answer to the first, a very brief notice of the order will be sufficient. In the first paragraph preceding the adjudging portion of the order, which does not purport to state any facts, the court "finds" that during the first part of the trial "when the question came up as to the position of counsel" the relator was "insulting and impudent to the court in his remarks," *etc.* What was the position of counsel referred to? Was it one assumed by him upon some preliminary question then the subject of argument? Or did the court refer to the place in the courtroom relator presumed to occupy? What were the remarks made by him which the court deemed insulting and impudent?

In the second paragraph the court finds and declares that on the previous day during the trial it had admonished counsel three times that "the question covered by his question had been ruled upon by the court and it was not further necessary for him to put the questions in order to preserve his record," and that "three times afterward he put the same question." What was the question? To whom was it propounded? Was it propounded to a witness who was then being examined, or had it been propounded to a different one? Was it each time expressed in the same language? Did it seek to elicit testimony on the same subject to which the previous one related?

In the third it is found that counsel was "insulting and impudent" to the court while it was making remarks with ref-

erence to a question which had been put to a witness on the stand, the meaning of which was not clear.  Of what did the insult and impudence consist?  Was it manifested by word or act, or both?  Or did it consist of the manner of counsel interpreted in the light of the attendant circumstances?

In paragraph 4 it is found that while the court was undertaking to make remarks pertinent to the case on trial it was interrupted by relator.  Was the interruption by word or exclamation, or by some noise or movement accidentally or intentionally made by relator?  How may it be determined whether the words spoken or act done was really an interruption or not?  Or whether, if it was, the relator was not entirely within the limits of his duty to the defendant on trial in calling to the attention of the court some error into which it had fallen?

In the fifth paragraph the finding is that relator's "manner all through has been insulting and the effect has been  *   *   * to bring the court in contempt and to interfere with the proper administration of justice."  What was the manner of relator?

Omitting the inquiry whether the court could with propriety, at a given time during the course of the trial, assemble with what then occurred the words, acts and manner of counsel on previous days and make these combined the basis for a judgment for contempt against him, the findings, · either taken separately or together, do not furnish any answer to the several inquiries which we have propounded with reference to them.  In other words, as .was said in the *Breen Case, supra,* the findings state "conclusions and inferences only, drawn by the judge from the facts as they actually transpired, thus leaving this court no alternative but to accept these conclusions or to hold the order invalid."

In making the second contention, counsel for respondents [2]   have failed to observe the distinction between direct and indirect contempts.  Proceedings in both are criminal in their nature.  (*State ex rel. B. & M. etc. Co.* v. *Judges,* 30 Mont.

193, 76 Pac. 10; *In re Mettler, supra.*) The power to inflict punishment in either is inherent in the courts. Every court, in the very nature of things, must possess the power to protect its dignity by compelling counsel and litigants, as well as all other persons who are called into its presence or who are there merely as spectators, to observe decorous and respectful conduct, to the end that the proceedings in hand may be conducted in an orderly way. The power is designated as "inherent" because it is necessary to preserve the dignity of the judicial department of the government, and, whenever the occasion demands, must be exercised to its fullest extent to enable the court to discharge its high duty of administering justice between parties whose rights are put in issue before it, or to enforce these rights after they have been determined. Otherwise, the court is recreant to its duty and becomes an object of ridicule and contempt.

Members of the legal profession are, in a sense, officers of [3] the court, in that they enjoy the high and exclusive privilege of representing citizens who seek to have their rights determined. Upon them, above all other members of society, rests the duty to uphold and maintain the dignity of the court in which they practice. The obligation, if not embodied in express terms, is clearly implied in the oath to which they subscribe upon being granted the right to practice their profession. In consideration of the fact that they are trained in the law and are presumed to be well acquainted with the rules of procedure, as well as the extent of their rights and duties as representatives of litigants, they are held to a stricter accountability. The power is not an arbitrary one, however. [4] It is to be exercised only when the necessity arises, and then with an intelligent discretion to serve its purpose under the rules of procedure established by the usages of the courts [5, 6] or prescribed by statute. The legislature may prescribe the modes of procedure, but it cannot take away or abridge the power. Our legislature has prescribed modes of procedure and it is incumbent upon all the courts to observe them.

(*In re Mettler, supra.*)  This is so because there must be such a record made that the convicted contemnor, if he chooses, may submit it to the appellate tribunal for review by appeal from the final judgment, or by other appropriate method.  In this state he may do this only by invoking the writ of *certi-* [7] *orari* (Const. Art. VIII, sec. 3), or, in proper cases, the general supervisory power vested in this court over all the inferior courts (Const., Art. VIII, sec 2; *State ex rel. Sutton* v. *District Court,* 27 Mont. 128, 69 Pac. 988; *State ex rel. Coleman* v. *District Court,* 51 Mont. 195, 149 Pac. 973; *State ex rel. Zosel* v. *District Court,* 56 Mont. 578, 185 Pac. 1112). Under our form of government, a citizen may not be imprisoned or subjected to the payment of a fine by the final judgment of any one man, whether his offense is one denounced by the legislature or one for which he may be brought to the bar by the court itself in the exercise of its inherent power.

The right to exercise this power summarily in cases of direct [8] contempt is recognized by section 7311 of the Revised Codes.  The purpose of this section is to prescribe what record must be made to evidence the legality and regularity of the proceeding.  It requires that ''an order must be made, reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt,'' *etc.,* in order that the jurisdiction of the court may thus be made to appear.  The word ''as,'' employed in the participial clause ''as occurring,'' is defined generally by our lexicographers as an adverb or conjunction.  (Webster's New International Dictionary; Century Dictionary.) According to the same authorities it is sometimes used also in a pronominal sense equivalent to ''who'' or ''which.''  The cases of *Beasley* v. *People,* 89 Ill. 571, and *Kelley* v. *Peterson,* 9 Neb. 76, 2 N. W. 346, furnish illustrative examples.  Obviously, this quality must be assigned to it here, the antecedent being the word ''facts.''  The participial expression ''as occurring'' is therefore equivalent to ''which occurred.''  If there were any doubt that this is the sense to be attributed to it, it is

removed by the later use of the term "thereby," which has reference to the word "facts"; that is, the words, or acts, or manner, any one or all of these, which form the basis of the judgment. The purpose and meaning of the provision is thus made clear. This may be illustrated further, however, by this [9] consideration: A proceeding for an indirect contempt, as provided in the same section, must be instituted by the presentation of an affidavit setting forth the facts constituting the contempt, or by a statement of them by a referee or arbitrator or other judicial officer. The contemnor must then be brought before the court by process, and held for trial or be admitted to bail, as provided in sections 7312 *et seq.* A hearing must then be had upon the answer of the contemnor, which must be conducted with all the incidents of an ordinary criminal case, except that a jury is not required. If the contemnor is found guilty the court pronounces judgment as in ordinary criminal cases, sentencing him to pay a fine or to undergo imprisonment, or both fine and imprisonment may be imposed. The judgment is then executed as in other cases. The affidavit, the process, the answer of the contemnor, and the evidence, when properly preserved, together with the judgment, constitute the record.

In a case of direct contempt, the contemnor being already [10] present in court, neither formal charge against him in writing nor process is required. The court stops the proceeding during the course of which the contempt has occurred and summarily renders judgment, imposing such punishment as it may deem proper within the limits prescribed by the legislature. No record is made other than the judgment. This, as the statute prescribes, must recite the facts showing the contemptuous words, acts or manner, as the case may be. It is then entered under its appropriate title to indicate the character of the proceeding, and this constitutes the record. If the court fails to formulate the judgment as section .7311, *supra,* prescribes, there is no record to which the appellate court may look to ascertain whether the facts "as occurring" in its im-

mediate view and presence are sufficient to form the basis of a judgment. If the contempt is committed by counsel employed in the trial of a case, or by a witness undergoing examination, so much of the evidence introduced in that case as is necessary to disclose the contempt must be recited in the judgment. If it is committed by a person not connected with the case then in hand, the facts pertinent to that case may or may not tend in any way to disclose any misconduct or breach of propriety. In other words, the pertinent facts are not disclosed by the presiding judge through the medium of witnesses, but are such as are observed by the judge himself. By his recital of them as they are known to him the record is made. The validity of the judgment is to be tested by the recital thus made, and cannot be supplemented by evidence or by facts certified up in the return by the judge. The proceeding, therefore, though taken and determined during the course of other proceedings then before the court, is distinct from the latter, and the record in the latter is no part of the record in the former. Upon *certiorari*, the judgment itself is the only record, and a certified copy of it constitutes the full return to be made to the appellate court in obedience to the writ, as prescribed by section 7206 of the Revised Codes.

In support of their contention, counsel have made an elaborate argument in their brief, and cite authorities which hold that the facts upon which the contemnor has been adjudged guilty may be certified to the appellate court to supplement the order. These authorities apply, however, to cases of indirect contempts, and are not in point here.

In their brief, counsel for the relator make the point that [11] he was not accorded an opportunity to explain or excuse his contempt and thus purge himself or show that no contempt was intended. This seems to be the better practice even in flagrant cases (4 Ency. Pl. & Pr. 789). No one should be condemned without a hearing. We cannot ascertain in this case what the facts were, and therefore express no opinion as to whether the relator was guilty. So far as we can

judge, he may have been able to satisfy the presiding judge that his conduct and manner, though apparently contemptuous, were in fact not so.

The order is annulled, and the bail bond furnished by the relator is discharged and his sureties exonerated.

*Order annulled.*