Ex PARTE BURNS. STATE EX REL. BURNS, RELATRIX, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(Nos. 6,418, 6,422.)

(Submitted October 15, 1928. Decided October 23, 1928.)

[271 Pac. 439.]

*Messrs. Walker & Walker* and *Mr. C. S. Wagner,* for Relatrix, submitted a brief; *Mr. Wagner* argued the causes orally.

*Mr. J. F. Sullivan,* for Respondents, argued the causes orally.

MR. JUSTICE GALEN delivered the opinion of the court.

An original application was made and presented to this court by Bridget M. Burns for a writ of habeas corpus, and also for a writ of review in aid thereof. Both writs were issued. In response to the first mentioned, the sheriff of Silver Bow county, to whom the writ was directed, made and filed his return justifying the imprisonment of the petitioner upon a commitment issued by the district court, a copy of which is made a part of the return. In the second cause above entitled the respondents appeared and filed a certified copy of the record of proceedings before the district court had in an action therein entitled George August, Plaintiff, v. Bridget M. Burns, and Bridget M. Burns as Guardian of the

Person and Estate of Pauline Marie August, a Minor, on the application of the plaintiff in the action to have Bridget M. Burns committed for contempt of court for failure to surrender and deliver unto plaintiff therein the custody and control of his minor child, Pauline Marie August, in accordance with a judgment of the court theretofore entered in that action. In the affidavit filed by the plaintiff, upon which the contempt proceeding is based, it is recited that on the fifth day of August, 1926, by judgment duly given and made in the action, the plaintiff was awarded the control and custody of the child; that thereafter the defendants in the action appealed to the supreme court from the judgment, and that on the fourth day of May, 1927, the judgment was by this court affirmed; that immediately thereafter the defendants removed the child from the state of Montana, with full knowledge that the judgment had been affirmed and that plaintiff was entitled to the custody and control of the child; that on or about the fifteenth day of June, 1928, the defendants returned to the state of Montana and are now within the jurisdiction of the court; that the defendants at all times after the rendition and entry of the decree have had the custody and control of the child, and have refused, and still refuse, to comply with the judgment; that the defendants removed the child from the state of Montana for the purpose of avoiding the effect of the judgment, and to defeat the same, and the matters and things adjudicated thereby; that the child is now in the custody and under the control of the defendants; that to the knowledge of affiant, communicated to him by the defendants, they have concealed the child somewhere without the state of Montana, and refuse to divulge her whereabouts, or to inform affiant of the place where they have placed her; that the child is under the control of the defendants and could be produced if the defendants desired to do so; that on the eighteenth day of June, 1928, affiant served upon the defendants a demand for the custody of the child in accordance with the terms and conditions of the

decree, together with a certified copy of the judgment in the action; and that notwithstanding, the defendants refused, and still refuse, to deliver the custody of the child to affiant. Upon plaintiff's affidavit so filed, an order was issued on August 2, 1928, requiring the alleged contemner to show cause why she should not be punished for a contempt of court. Issue was joined on the counter-affidavit of Bridget M. Burns, wherein she states that the judgment awarding to the plaintiff the custody of the child was entered the fifth day of August, 1926, and affirmed by decision of this court on the fourth day of May, 1927; that on July 26, 1926, prior to the entry of the judgment, the child left the state of Montana with affiant's consent, in company with her aunt, Sister Inez, to visit her grandmother, Mrs. Horne, and her uncle, John Horne, in Seattle, Washington; that at the time the child so departed affiant was near the town of Wisdom, Montana; that the affiant did not remove the child from the state of Montana after the rendition of the decree in the action and after the affirmance thereof by this court, "or at any other time for the purpose of avoiding the effect of said decree and to defeat the same and the matters and things adjudicated thereby; that affiant has not concealed said child and does not now conceal said child, nor has she ever informed the plaintiff * * * that she has been concealing said child for the purpose of rendering said decree ineffective."

At the hearing which was held on September 29, 1928, evidence was introduced by both the plaintiff and the defendants in the action, and at the conclusion thereof the court made the following statement to the accused: "Well, Mrs. Burns, the court will make its decision now. It finds you guilty of contempt of this court and directs that you be confined in the county jail of this county until that child is produced and turned over to its father, through some agency that you desire to select. Your testimony here this morning was not only evasive and self-serving, but it was the rankest kind of perjury. The sheriff is directed to carry out the

order of the court. I will write an order and have it embodied in the minutes."

On the same day the court made and entered a formal order, which reads as follows:

"This day, the order to show cause why the defendant herein should not be punished for contempt of Court coming regularly on for hearing, plaintiff being present and represented by counsel Messrs. J. F. Sullivan, and Harlow Pease, and the defendant herein being present and represented by counsel Messrs. T. J. Walker, and H. D. Carmichael:

"Thereupon, after testimony on the part of the respective parties herein being heard and submitted, the Court finds the defendant herein, 'Guilty of Contempt of this Court' and ordered and directed that she be confined in the County Jail of Silver Bow County, Montana, until the child Pauline Marie August, is produced and turned over to her father George August, the plaintiff in this action, through some agency that she, the said defendant herein may select and the Sheriff of this County is directed to carry out the order of the Court. Comes now T. J. Walker, Esq., counsel for the defendant herein, and requests the Court to grant a stay of execution for a reasonable time to enable him to prepare an appeal to the Supreme Court of the State of Montana, from the said ruling of the Court, which request was by the Court denied.

"GEORGE BOURQUIN,
"Judge."

The facts appearing in the action resulting in the entry of judgment awarding to the plaintiff the care and custody of the child are fully set forth in an exhaustive opinion by this court affirming the judgment, of which Mr. Justice Matthews is the author, reported in *August* v. *Burns*, 79 Mont. 198, 255 Pac. 737.

The contempt alleged and sought to be established here consists of the disobedience of a "lawful judgment, order, or process of the court." (Sec. 9908, Rev. Codes 1921.) In

these proceedings the jurisdiction of the court to make such order of commitment is assailed. The petitioner was found guilty and committed pursuant to the provisions of section 9918 of the Revised Codes of 1921, which reads as follows: "When the contempt consists in the omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he shall have performed it, and in that case the act must be specified in the warrant of commitment."

The statute also provides that "The judgment and orders of the court or judge, made in cases of contempt, are final and conclusive, and there is no appeal; but the action of the district court or judge can be reviewed on a writ of certiorari by the supreme court, or a judge thereof." (Sec. 9921, Rev. Codes 1921.)

" 'The office of the habeas corpus is to bring up the body only, and the court or judge will upon the return in this proceeding judge of the illegality of the imprisonment upon the commitment. If this be irregular merely, or it does not appear therefrom that the inferior court was without jurisdiction, the complainant will be remanded. If, however, it is the purpose of the complainant to have the proceedings * * * reviewed, and the judgment or order therein annulled, on the ground of want or excess of jurisdiction, then certiorari may issue * * * to bring up the record, to enable the superior court or its judge to take such action therein as may be proper.' (*State ex rel. Jackson* v. *Kennie,* 24 Mont. 45, 60 Pac. 589.)" (*In re Shaffer,* 70 Mont. 609, 227 Pac. 37.)

In cases of direct contempt of court, the law requires that an order of commitment must be made, reciting the facts occurring in the immediate view or presence of the court or judge; but "when the contempt is not committed in the immediate view and presence of the court, or judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt." (Id., sec. 9910.) Contempt

in the immediate presence of the court or judge is direct contempt; and contempt without the presence of the court or judge is denominated as indirect or constructive contempt. As to the first mentioned, direct contempt, it has been frequently held by this court, in construing the statute, that its provisions, requiring the facts constituting the contempt to be set forth in the order, must be followed—otherwise, the order is fatally defective. The order must recite the facts showing the contempt committed, on which the order of commitment is predicated so that a review thereof as to its sufficiency may be had before this court. (*In re Mettler,* 50 Mont. 299, 146 Pac. 747; *State ex rel. Rankin* v. *District Court,* 58 Mont. 276, 191 Pac. 772.) In constructive contempt "the affidavit, the process, the answer of the contemner, and the evidence, when properly preserved, together with the judgment, constitute the record." (*State ex rel. Rankin* v. *District Court,* supra.) It is our opinion, however, that the correct practice, and that which best subserves the ends of justice in constructive contempt cases, is for the court to make findings of fact in its order of commitment showing, as a matter of law, that the party is in fact guilty of contempt, or to at least make reference to or adopt the allegations of the affidavit upon which the charge is based. (6 R. C. L., p. 536; *Hoffman* v. *Hoffman,* 26 S. D. 34, 30 L. R. A. (n. s.) 564, 127 N. W. 478, and note, Ann. Cas. 1913A, 956, and note.)

"The power to inflict punishment in either is inherent in the courts. Every court, in the very nature of things, must possess the power to protect its dignity by compelling counsel and litigants, as well as all other persons who are called into its presence or who are there merely as spectators, to observe decorous and respectful conduct, to the end that the proceedings in hand may be conducted in an orderly way. The power is designated as 'inherent' because it is necessary to preserve the dignity of the judicial department of the government, and, whenever the occasion demands, must be

exercised to its fullest extent to enable the court to discharge its high duty of administering justice between parties whose rights are put in issue before it, or to enforce these rights after they have been determined. Otherwise, the court is recreant to its duty and becomes an object of ridicule and contempt. * * * The power is not an arbitrary one, however. It is to be exercised only when the necessity arises, and then with an intelligent discretion to serve its purpose under the rules of procedure established by the usages of the courts or prescribed by statute. The legislature may prescribe the modes of procedure, but it cannot take away or abridge the power. Our legislature has prescribed modes of procedure and it is incumbent upon all the courts to observe them. (*In re Mettler*, supra.) This is so because there must be such a record made that the convicted contemner, if he chooses, may submit it to the appellate tribunal for review. * * *

In this state he may do this only by invoking the writ of certiorari (Const., Art. VIII, sec. 3), or in proper cases, the general supervisory power vested in this court over all the inferior courts (Const., Art. VIII, sec. 2; *State ex rel. Sutton* v. *District Court*, 27 Mont. 128, 69 Pac. 988; *State ex rel. Coleman* v. *District Court*, 51 Mont. 195, 149 Pac. 973; *State ex rel. Zosel* v. *District Court*, 56 Mont. 578, 185 Pac. 1112). Under our form of government, a citizen may not be imprisoned or subjected to the payment of a fine by the final judgment of any one man, whether his offense is one denounced by the legislature or one for which he may be brought to the bar of the court itself in the exercise of its inherent power." (*State ex rel. Rankin* v. *District Court*, supra.)

Proceedings in both direct and constructive contempt are criminal in their nature (*State ex rel. B. & M. Co.* v. *Judges*, 30 Mont. 193, 78 Pac. 10; *In re Mettler*, supra; *State ex rel. Rankin* v. *District Court*, supra; *State ex rel. Nett* v. *District Court*, 72 Mont. 206, 232 Pac. 204), and the order of commitment must be supported by substantial evidence.

"Contempt proceedings are *sui generis* (*State ex rel. Zosel* v. *District Court,* 56 Mont. 578, 185 Pac. 1112), but are criminal in their nature (*State ex rel. Rankin* v. *District Court,* 58 Mont. 276, 191 Pac. 772). So highly penal are they in character that the evidence must show that the accused is guilty beyond a reasonable doubt, otherwise he is entitled to be discharged. (*State ex rel. Boston & Mont. C. C. & S. M. Co.* v. *Judges,* 30 Mont. 193, 76 Pac. 10.) In the case last cited this court said that from an examination of the practice provided for in the Code of Civil Procedure (secs. 2170–2183 of the 1895 Codes, corresponding to sections 9908–9921, Rev. Codes 1921) for summary punishment of contempts it is apparent that contempt proceedings 'have most, if not all, the characteristics of a criminal case and few, if any, of a civil action.' " (*State ex rel. Nett* v. *District Court,* supra.)

"If the charges are unsupported by the evidence, or the ▮ findings are contrary to all the substantial evidence, or where the decision below has no evidence to support it, the question then becomes one of law, and the evidence may be reviewed to determine if such is the fact, but the court cannot review the evidence to determine the preponderance thereof. (3 Cyc. 348–362; *Somers* v. *Wescoat,* 66 N. J. L. 551, 49 Atl. 462; *Kidder* v. *Townsend,* 3 Johns. (N. Y.) 435.)" (*State ex rel. Griffiths* v. *Mayor of City of Butte,* 57 Mont. 368, 188 Pac. 367.)

The contempt alleged in this case is what is known as constructive contempt, without the presence of the court, and therefore evidence is required to prove it, and a judgment of committal not based on substantial evidence tending to prove the charge is unlawful and cannot be sustained. The court is without jurisdiction in fact to render it.

In the order of commitment, above set forth, the court made no findings of fact as to the truth of the plaintiff's charge, or otherwise, and failed to show therein that the act required to be performed was within the contemner's power. Resort must be had to the record to determine the jurisdiction of the

court upon the evidence produced. A conflict in the testimony may not be considered, but if there is no substantial evidence to support the order, it is manifest that the court was without jurisdiction to make it.

In this case neither the order of commitment nor the evidence introduced shows that it was within contemner's power to deliver the child to the plaintiff as by the judgment in the action required, or that she voluntarily and contumaciously brought the disability upon herself. And where it is not within the power of a person charged with contempt to perform the act required, she may not be imprisoned. (Sec. 9918, Rev. Codes 1921.) Such procedure would be as useless as oppressive. She might thus be imprisoned for life and it is hardly consonant with reason or law to punish a person for not doing that which he has not the ability to do. (*State ex rel. McLean* v. *District Court*, 37 Mont. 485, 15 Ann. Cas. 941, 97 Pac. 841; *State ex rel. Cash* v. *District Court*, 78 Mont. 92, 252 Pac. 388.)

Mr. Chief Justice Brantly, speaking for this court in the case of *State ex rel. McLean* v. *District Court,* supra, in construing the statute (section 9918), said: ''Here the imprisonment imposed was for the contempt, and not to enforce a compliance with the order, the court evidently concluding from the facts submitted that the relatrix, while unable to comply with the order, had nevertheless wilfully brought upon herself the inability which she alleges as justification for failure to comply. In our opinion, inability to render obedience to such an order is a good defense to a charge of contempt for its violation, unless it appears that the person charged has voluntarily and contumaciously brought the disability upon himself. As was said in *Nixon* v. *Nixon*, 15 Mont. 6, 37 Pac. 839: 'It seems hardly consonant with reason or law to punish a man for not doing that which he has not the ability to do.' And this is the rule announced by the courts generally.'' (Citing a number of cases.) And see exhaustive note to the report of this case in 15 Ann. Cas. 943.

In substance, Mrs. Burns testified that the child did not ▆ wish to go to her father, and that during the pendency of the proceedings in the action and before judgment was made and entered therein, August 6, 1926, awarding to the plaintiff the custody of the child, the latter had in the month of July, 1926, left the state of Montana with her aunt, Sister Inez, for the state of Washington and has not since been within the state of Montana; that witness was visiting on a ranch near the city of Wisdom when the child left witness' home in Butte, and did not have anything to do with the child's departure; that thereafter witness saw the child in the city of Spokane, Washington, in August or September, 1926, and was with the child in Wenatchee, Washington, in September or October, 1926; that she left the child in Spokane in the custody of her aunt in September or October, 1926; has not seen or heard of the child since, and does not know her present whereabouts; and that it is not now, and never has been, within her power to comply with the judgment since the date it was made and entered. Her testimony is corroborated, and the only evidence conflicting therewith is that of the plaintiff, to the effect that he saw the child in Butte a couple of times, in the vicinity of Mrs. Burns' residence, in the month of November, 1927, and that he accompanied the sheriff to Mrs. Burns' house in Butte on or about the eighteenth day of June, 1928, to make service upon her of a written demand for the surrender of the child to him, and at that time, upon service of such demand, the contemner said to the plaintiff, "You dirty son-of-a-bitch of a Greek, I got Marie put away where you will never find her." If the defendant did see the child in Butte at the time he states, he then had full power and authority to take her into his custody and control. At any rate, it was not shown at the hearing that the child was then within the jurisdiction of the court, or that the contemner was guilty of spiriting her away after the entry of the court's judgment. Evidence to the effect that Mrs. Burns said that she had the girl put away

where the plaintiff would never find her, falls short of establishing the charge that the contemner removed the child from the state after the judgment was entered with full knowledge thereof and in order to avoid the judgment. The petitioner says that she was in the company of the child in Wenatchee, Washington, in September or October, 1926, after judgment in the action had been entered, and makes no explanation as to why she brought the child back to Spokane and left her there, which would tend to give credence to the plaintiff's testimony to the effect that the petitioner stated to him at her residence in Butte in the month of June, 1928, in substance, that she had the child where he would never find her. However, this falls short of supporting the charge. We find no evidence in the record whatsoever, supporting the court's statement that she was guilty of "the rankest kind of perjury" or of any false testimony. Since it appears that before the entry of the judgment the child voluntarily left the jurisdiction of the court, the petitioner cannot lawfully be imprisoned for failing to do an act which it is not within her power to perform.

A careful examination of the record discloses that the plaintiff wholly failed to establish the allegations of his affidavit filed in the action charging the petitioners with contempt of court, and an order of commitment for contempt based solely upon conjecture and suspicion, rather than substantial evidence, as in the case under consideration, cannot, in application of the most elementary principles of law, be upheld. In our opinion the court was, as a matter of law, without jurisdiction to make the order of commitment, and accordingly, it must be and is hereby set aside.

It is noteworthy that the writ of certiorari was by this court issued on the fifth day of October, 1928, and that a stay of proceedings was ordered as by the statute authorized. (Sec. 9840, Rev. Codes 1921.) The writ appears to have been regularly served on the clerk of the court on October 8, 1928. Notwithstanding, the court on October 11, 1928, made

and entered an order of commitment *nunc pro tunc*, the date of the hearing and original order of commitment, September 29, 1928, in an attempt to materially change the original order. It was this latter commitment which the sheriff used as a part of his return to this court in justification of the detention of the prisoner. Such action of the court in attempting such amendment of the order of commitment was unwarranted and contemptuous, and will be by this court totally disregarded. It was the court's duty to certify the record as it was at the time the writ was served. The court was powerless to materially alter or add to the record as made. (*In re Harney*, 29 Mont. 370, 74 Pac. 1080.)

Counsel for the respondents have not favored this court with a brief, although especially invited so to do. For the reasons stated the proceedings are annulled, and the sheriff of Silver Bow county is hereby ordered and directed to release and discharge the prisoner forthwith.

*Order annulled.*

ASSOCIATE JUSTICES STARK and MATTHEWS concur.

MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE MYERS not sitting.