STATE OF MONTANA, ex rel., HUGH G. KIDDER, and
L. H. KOZOWSKI, Petitioners and Applicants, v. THE
DISTRICT COURT of the FOURTH JUDICIAL DIS-
TRICT of the State of Montana, IN AND FOR the
COUNTY OF SANDERS and the Honorable E. Gardner
Brownlee, a District Judge thereof, Respondents.

No. 11890.
Submitted July 6, 1970.
Decided July 28, 1970.
472 P.2d 1008.

Hugh G. Kidder, Missoula, for petitioners and applicants.

Turnage & McNeil, Jean A. Turnage, argued, Polson, for respondents.

PER CURIAM:

This is an application for a writ of supervisory control or other appropriate writ seeking to set aside an order of contempt by the district court, Hon. E. Gardner Brownlee, judge thereof, in Sanders County.

Relators are Hugh G. Kidder, an attorney of Missoula, and his client, L. H. Kozowski of Plains, Montana

Kozowski was defendant in Sanders County Cause No. 4557, entitled Bronco Motors, Inc. v. Ralph E. Thompson and L. H. Kozowski. In that cause, District Judge Jack L. Green had made an order supplementary to execution requiring the defendant and judgment debtor Kozowski to appear and answer concerning his property before a judge of the district court in

Thompson Falls at 10:00 a.m., May 12, 1970. The order was made on April 22, 1970. Personal service of the court was made on Kozowski on May 4.

Kozowski, on May 11, the day before the scheduled hearing, contacted his attorney Mr. Kidder by telephone. Mr. Kidder at about 4:45 p.m. that day contacted Mr. Turnage, counsel for the judgment creditor, and sought agreement for a delay in the date set for the appearance of Kozowski. Mr. Turnage refused.

On the following morning, Kidder accompanied Kozowski to the courthouse in Thompson Falls and there filed an affidavit of disqualification of the presiding judge, Hon. E. Gardner Brownlee.

Mr. Kidder knew Judge Brownlee would be presiding. Mr. Kidder has had past difficulties with Judge Brownlee; and, it is frankly admitted by Kidder that he, rather than his client, Kozowski, made the affidavit of disqualification because he would not appear in Judge Brownlee's court for any reason. He did not appear; rather, he advised his client not to appear. He left the clerk's office and the courthouse at about 9:30 a.m. and, as he put it in response to questions of this Court, "I made myself scarce."

It is obvious that Mr. Kidder's filing of the affidavit of disqualification and ignoring of the court order to Kozowski to appear at 10:00 a.m. was done in flagrant and insulting disregard of the dignity of the court and its presiding judge.

At 10:00 a.m. Judge Brownlee opened court. He waited until 11:00 a.m.; Kozowski did not appear. Judge Brownlee then made the following order:

"The above-entitled matter came on for hearing on Tuesday, May 12, 1970 at the hour of 10:00 A.M. upon an Order Supplementary to Execution issued by the Honorable Jack L. Green on the 22nd day of April, 1970 requiring the defendant and judgment debtor, L. H. Kozowski, to appear and answer con-

cerning his property before a judge of the District Court of this District in the Courtroom in Sanders County Courthouse, Thompson Falls, Montana.

"A statement of facts having been made to the Court by J. A. Turnage, Attorney at Law, Polson, Montana as an officer of this Court, and from such statement of fact it has been made to appear to this Court that personal service of the said Order dated April 22, 1970 had been made upon defendant, L H. Kozowski, on May 4, 1970 in Sanders County, Montana; that at the hour of 10:00 o'clock A.M., May 12, 1970 there appeared in person before this Court Clair Sheldon, an officer of the plaintiff, and plaintiff's attorney, J. A. Turnage, prepared to proceed with the examination hearing pursuant to said Order of April 22, 1970.

"That neither L. H. Kozowski, defendant and judgment debtor, or his attorney, Hugh Kidder, appeared before the above entitled Court at the hour of 10:00 o'clock A.M., May 12, 1970, or thereafter on said date.

"It having been further made to appear to this Court that at approximately the hour of 9:00 A.M. the said Hugh Kidder, attorney for said L. H. Kozowski, was personally present on May 12, 1970, in the office of the Clerk of this Court, where he remained for one-half hour or thereabouts.

"The Court finds that the defendant, L. H. Kozowski, has wilfully disobeyed the subpoena served upon him ordering him to appear for the hearing, and is, therefore, guilty of contempt of Court.

"The Court further finds that Hugh Kidder, his attorney, has wrongfully interfered with the lawful process or proceeding of this Court and is, therefore, guilty of contempt of Court.

"The Court having been fully advised in the premises and good cause appearing, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

"1. That L. H. Kozowski is guilty of contempt of Court, and he is hereby sentenced to a term of five (5) days in the Sanders County jail.

"2. That his attorney, Hugh Kidder, is guilty of contempt of Court, and he is hereby sentenced to a term of five (5) days in the Sanders County jail.

"3. IT IS FURTHER ORDERED, That L. H. Kozowski and Hugh Kidder are each given thirty (30) days to purge themselves of contempt and if either fails to purge himself in the manner hereinafter set forth within that period of time, then and in that event the Sheriff of Sanders County is ordered to arrest him and cause him to serve the five days.

"4. Either L. H. Kozowski or Hugh Kidder are given the opportunity to purge himself of this contempt by the payment of the sum of $200.00 each to the Sheriff of Sanders County. If either of the parties purges himself of contempt, the Sheriff is instructed to deliver the funds to the plaintiff in the above entitled action to be by that plaintiff applied upon the Judgment.

"Dated this 12th day of May, 1970."

Thereafter, on the same day, Kozowski paid the $200 fine, upon advice of Kidder. Note here that what we have termed a "fine" is in reality a "purge payment" on the judgment, and not a "fine" in the true sense of the word.

On May 14 the order of contempt was mailed to Mr. Kidder. Mr. Kidder, on his own behalf and on behalf of Kozowski, filed the instant petition before this Court on June 1. On that same day we issued an order as follows:

"Original proceeding. Application for an appropriate writ to require the respondent court to:

"1. Vacate an order of contempt;

"2. Return a fine paid by one of petitioners; and

"3. Vacate a hearing set before a referee for June 3, 1970.

"Counsel was heard ex parte and the matter taken under advisement by the Court, which now makes the following ORDER:

"1. The writ sought on the request numbered 3 above is denied.

"2. As to the requests numbered 1 and 2 the respondent court is directed to vacate the order and return the fine paid or, in the alternative, to be and appear before this Court and show cause why it has not done so at the hour of 9:30 a.m. on the 23rd day of June, 1970. In this regard it is argued that the contempt recited in the order appears to be an indirect contempt, being out of the presence of the court, and that under the authority of State ex rel. Rankin v. District Court, 58 Mont. 276, 191 P. 772, a hearing may have been necessary.

"Counsel shall arrange for service of copy of petition, attachments, brief and this order to show cause upon respondent court forthwith."

On the return day appearance was made by answer, largely setting up the facts and reason for the order of contempt.

As noted in our order to show cause, heretofore quoted, we have two problems presented. Whether the contempt order is valid and whether the fine paid by Kozowski should be returned.

As to the validity of the contempt order, we first meet the question of whether the affidavit of disqualification was proper. Relator argues that if it had the effect of removing Judge Brownlee from jurisdiction, it follows that Kidder's failure to appear was not contemptuous since the presiding judge could only act to arrange the calendar, call in another judge and handle administrative matters. As hereinafter set forth, we do not concur in this position of relator.

For further background in this matter, the same counsel and the same judge were involved in State ex rel. Ross v. Dist. Ct., 150 Mont. 233, 239, 433 P.2d 778, 781. In that case the special master's report, adopted by this Court, said:

"* * * Disqualification of Judge Brownlee appears to be a standard practice with this law firm, and considerable friction has developed between them and Judge Brownlee as a result."

In yet another case, State ex rel. McNeal v. Dist. Ct., 144 Mont. 550, 553, 399 P.2d 997, 999, this Court in a proceeding involving the question of disqualification and also involving Relator Kidder, stated:

"We do, however, take this means to issue to counsel a warning that further abuses of the statutory disqualification statutes will not be tolerated."

Added to this background, Relator Kidder informed this Court he felt that he did not dare go before Judge Brownlee for fear of being held in contempt by his very presence. While we cannot dispute counsel's feelings, we cannot accept such a contention about a judge whose work we have frequently reviewed and found to be of excellent judicial quality.

Turning now to the instant case. On May 4 Kozowski was served with Judge Green's order to appear to answer questions on May 12. Kozowski did nothing until May 11, when he called Mr. Kidder to appear with him. Thus the attempted disqualification was not timely as required by section 93-901, R.C.M.1947, as far as Kozowski was concerned. Yet, counsel argues that since he, counsel, did not receive the case until May 11 he could make the affidavit so long as he filed it immediately. To reach this conclusion counsel has the thought that he, independent of the litigant, has a right to disqualify.

Section 93-901 provides in part:

"Any * * * judge * * * must not sit or act as such in any action or proceeding:

* * * * * * * * * *

"4. When either party makes and files an affidavit as hereinafter provided for, that he has reason to believe, and does believe, he cannot have a fair and impartial hearing or trial before

a district judge. Such affidavit may be made by any party to an action, motion, or proceeding, personally, *or by his attorney or agent.* * * *".

(emphasis supplied)

 *Counsel* argues that thus he, counsel, has the right independent of the party because of the underlined language. We disagree and so hold. The attorney's or agent's right is derivative from that of the party; and would not serve to extend the statutory time for exerting that right. Thus, the affidavit did not operate to divest Judge Brownlee of jurisdiction.

 We now consider the contempt order heretofore quoted. For our purpose here we shall accept the deliberate advising of the client not to appear as a contemptuous act under the circumstances. The contempt, however, was not that of the litigant. He was merely following his attorney's advice; it is clear that he had no idea of not appearing. He retained Mr Kidder to appear with him.

Our question narrows down to whether it was a direct or an indirect contempt. We do not pass upon the sufficiency of the recital of the acts or omissions constituting the contempt. In State ex rel. Rankin v. District Court, 58 Mont. 276, 191 P. 772, the difference between indirect and direct contempt was discussed. Again in State ex rel. Stagg v. District Court, 76 Mont. 495, at pages 501, 502, 248 P. 213, at page 215, in a case similar to the instant case in that an affidavit of disqualification was involved, this Court said:

"The underlying distinction between direct contempt and constructive or indirect contempt is that the first embraces all those contemptuous acts which may be committed in the presence of the court, under either of the above definitions of that phrase, while the trial of a case is actually in progress, or during a recess of the court after the trial has commenced and which tends to prevent or delay the resumption of the trial; while the second includes all such acts as are committed when the court

is not sitting, but which tend by their operation to obstruct and embarrass or prevent the due administration of justice. (Stuart v. People, 3 Scam. 395.)

"While the filing of an affidavit in a cause at issue, but when the court is not in session for the purpose of hearing that cause, may cause the court to pause, on the commencement of such hearing, long enough to determine whether such affidavit was filed within time and to pass upon a motion to strike it from the files, and to this extent tends to obstruct or embarrass the administration of justice, such an act cannot be said to be committed 'in the immediate view and presence of the court,' if it can be said to be contemptuous.

"It is therefore apparent that, as the proceeding required by the statute in cases of constructive or indirect contempt was not followed, the court was without jurisdiction to proceed, and is without jurisdiction to enter judgment under any conceivable circumstances."

■ Here, the contemptuous act of advising the client not to appear was not "in the immediate view and presence of the court" and thus the court did not follow the statute in cases of constructive or indirect contempt. It was therefore without jurisdiction to enter judgment.

■ By what we have said, it is clear that the judgment of contempt must be set aside. It follows, too, that the payment of the $200 purge payment on the judgment by Kozowski as a result of a void order does not make that matter moot. Therefore it is ordered returned to Kozowski.

The order of contempt is set aside and the matter returned to the district court for further proceedings on the matter of contempt if the court is so inclined. While this Court will require the district courts to proceed strictly within the statutes and decisions, it will not tolerate deliberate interference with the process of law.